### In re NATIONAL LUMBER CO.

### PEOPLE'S BANK OF McKEESPORT v. FELL.

(Circuit Court of Appeals, Third Circuit.   April 18, 1914.)

No. 1819.

BANKRUPTCY (§ 165*)—PREFERENCES—SET-OFF.

Defendant bank discounted a note for the bankrupt before it matured, with reasonable cause to know that the bankrupt was insolvent. Thereupon the bank and the bankrupt began to accumulate money in the bankrupt's deposit account, refusing to charge thereto other notes as they matured, and two days before bankruptcy, when the account was sufficient to pay the note, the bankrupt drew a check in favor of the bank for the amount and paid the note. *Held*, that such transaction constituted a preference, and was not excused on the ground that the bank, had it waited until after bankruptcy, might have offset the deposit against its claim, under Bankr. Act July 1, 1898, c. 541, § 68a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), providing that, in all cases of mutual debts or credits between the estate and a creditor, the account shall be stated, and one debt shall be set off against the other, and the balance only allowed and paid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; James S. Young, Judge.

In the matter of bankruptcy proceedings of the National Lumber Company. Action by W. B. Fell, as the bankrupt's trustee, against the People's Bank of McKeesport. Judgment for plaintiff, and defendant bank brings error. Affirmed.

H. J. McAllister, of McKeesport, Pa., for plaintiff in error.
George R. Wallace, of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge.   On September 13, 1912, an involuntary petition was filed against the National Lumber Company, and in due course this was followed by an adjudication. This suit was brought by the trustee to recover a preferential payment of $3,000 made to the People's Bank of McKeesport a few days before the bankruptcy. The facts were scarcely in dispute, but at all events the verdict has settled that they were as follows:

For several years the company had been a depositor in the bank, carrying an average balance of a few hundred dollars. On July 22, 1912,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

a three months' note for $3,000 indorsed by the company was discounted by the bank, and the proceeds were credited to the company. This note would not mature until October 22. Late in August or early in September the company was insolvent, and the bank either knew or had reasonable cause to know of this condition. Immediate payment of the note was regarded by the bank as important, and the company undertook to discharge the obligation before it fell due. As a means to that end the company began to accumulate money in its deposit account. The custom of the bank had always been to charge up the company's notes as they matured, but now three of the company's notes— one of $544.27, falling due on September 3; one of $380.81, falling due on September 6; and one of $673.22, falling due on September 10—were refused payment and were protested, although there was money enough in the company's account on each of these dates to meet the notes just referred to. Several deposits of cash were made also, and two notes of solvent customers were discounted and the proceeds credited, thus bringing the account to the necessary point. Thereupon a check for $3,000 was drawn to the order of the bank on September 11, and the note was paid and surrendered to the company. Two days afterwards the petition in bankruptcy was filed.

Clearly every element of a preference is here. The only defense is that section 68a applies and relieves the bank:

"a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

The general meaning of this clause is plain enough, and we need hardly refer to the discussion in Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, cited in Bank v. Chicago, etc., Co., 229 U. S. 435, 33 Sup. Ct. 829, 57 L. Ed. 1268. The difficulty is that the decision does not fit the facts of the present case. If the company had allowed the money to remain in its account until after bankruptcy had supervened, a situation would have been presented to which the clause might have applied. But this was not done. The money was actually drawn out by the company—for this was the effect of its check—and was actually handed over to the bank in payment of the note, so that we do not have a case of mutual accounts where one may be set off against the other, but the case of the use of money to pay a debt under circumstances that made the payment preferential. The argument really comes to this: If the payment had not been made, the bank could have set off the deposit against the note, and the result would then have been just what it is now. The sufficient answer is—the contingency did not happen. The parties chose to pay and to accept the money in the ordinary course of events, and their conduct is to be judged by what they did, not by what they might have done. Bank v. Campbell, 81 U. S. (14 Wall.) 87, 20 L. Ed. 832.

The judgment is affirmed.