### GERMAN-AMERICAN STATE BANK v. LARIMER.

(Circuit Court of Appeals, Eighth Circuit. August 9, 1916.)

No. 4602.

BANKRUPTCY ☞304—ACTION BY TRUSTEE TO RECOVER PREFERENCE—INSTRUCTIONS.

In an action by a trustee in bankruptcy against a bank to recover a preference, the complaint alleged that by an arrangement between the bankrupt, the bank, and a third person, at a time when the bankrupt was indebted to the bank and known to be insolvent, the third person purchased the entire stock of merchandise of bankrupt, giving in payment a check on the bank, which was deposited by the bankrupt to his account and applied by the bank on his indebtedness. The answer alleged that the deposit was received in the usual course of business and was applied as a set-off on bankrupt's indebtedness under its general lien. *Held* that, if such was the fact, the bank had the right of set-off under Bankr. Act July 1, 1898, c. 541, § 68a, 30 Stat. 565 (Comp. St. 1913, § 9652), and its action in making the application under its lien did not constitute a preference, and that the failure of the court to submit such issue to the jury was reversible error.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 463; Dec. Dig. ☞304.]

Amidon, District Judge, dissenting.

---

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action at law by J. E. Larimer, trustee in bankruptcy of the estate of I. M. Blitz, against the German-American State Bank. Judgment for plaintiff, and defendant brings error. Reversed.

D. R. Hite, of Topeka, Kan. (Edwin D. McKeever, of Topeka, Kan., on the brief), for plaintiff in error.

· T. M. Lillard, of Topeka, Kan. (John W. Newell, William Wallace, R. W. Blair, and C. A. Magaw, all of Topeka, Kan., on the brief), for defendant in error.

Before SMITH and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. Larimer, as trustee of the estate of I. M. Blitz, a bankrupt, commenced this action against the bank to recover the sum of $5,000, with interest thereon at 6 per centum from December 26, 1912, on the ground that said sum was received by the bank from the bankrupt under such circumstances as would constitute a voidable preference. Among other allegations of the complaint it was alleged that on December 26, 1912, the bank, together with the bankrupt and one Sam Friedberg, entered into an arrangement whereby the bankrupt should execute a bill of sale for his stock of merchandise and store fixtures to said Friedberg, and whereby the said Friedberg should give to the bankrupt a check on the defendant bank for the sum of $5,000 as the purchase price of the said stock of merchandise and store fixtures; that the bill of sale was delivered as agreed, and after delivery of the check for $5,000 to the bankrupt the latter transferred the check to the defendant bank, which was thereupon entered on the books of the bank as a purported deposit by the said bankrupt; that at the time of the making of said purported deposit the bank was a creditor of the bankrupt, and then and there well knew that the check of $5,000 was the entire proceeds of a bulk sale of the jewelry stock of the bankrupt; that said purported deposit of $5,000 by the bankrupt was not a deposit of money in the usual course of business, but was in fact a transfer of all the available assets of the said bankrupt to the bank, while the said bankrupt was insolvent, and at the time the said transfer or purported deposit was made the bank had reasonable cause to believe that the enforcement of said transfer would effect a preference.

The bank by its answer, in addition to a general denial, alleged that on the 26th day of December, 1912, the bankrupt was indebted to it in a large sum greatly in excess of $5,000 for money borrowed and actually loaned to him by the bank; that for several years prior thereto the bankrupt had been a customer of the bank and a heavy borrower, as well as at various times a depositor; that on the 26th day of December, 1912, the bankrupt was a regular depositor at the bank, carrying an account therein; that on said day and in the due course of business the bankrupt deposited with the bank in the regular and usual way the sum of $5,000, for which sum

the bankrupt was given credit on the books of the bank; that thereafter on the following day said bank, by reason of the bankrupt owing it large sums of money in excess of $5,000 on certain promissory notes, which were past due, duly appropriated said $5,000 under its general lien upon the deposit of the bankrupt and applied the same as a set-off upon the amount due on said notes.

The issue thus presented by the pleadings was whether the deposit of the money by the bankrupt in the bank was a deposit in the usual course of business, with the right of set-off in the bank, or whether, although in the form of a deposit, taking the whole transaction between the bank, Friedberg, and the bankrupt, it amounted to a transfer by the bankrupt to his creditor as a payment on past due indebtedness while he was insolvent; the bank having reasonable cause to believe that the enforcement of the transfer would effect a preference. If the money was deposited by the bankrupt with the bank in the usual course of business, then the deposit would not constitute a transfer of the money to the bank, but simply created the relation of debtor and creditor between it and the bankrupt. Scammon v. Kimball, 92 U. S. 362, 23 L. Ed. 483; New York County Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380; Durkee v. National Bank, 102 Fed. 845, 42 C. C. A. 674.

The estate of the bankrupt would not be lessened in any degree, for the reason that, although the sum of $5,000 was paid to the bank, there was due and owing by the bank to the estate the same sum. So the real question for the jury to decide was whether this deposit by the bankrupt was in good faith, in the usual course of business, or whether it was a mere form and manner of transferring the $5,000 to the bank to be applied on the indebtedness of the bankrupt under such circumstances as to constitute the deposit a voidable preference. The trial court submitted to the jury the contention of plaintiff, but in our judgment did not submit the contention of the bank. Counsel for the bank requested the court to charge the jury as follows:

"The law gives to a bank a lien on the deposit of its customers and a right to set off against any indebtedness of a depositor any or all of the balance of said depositor equal to the amount of said indebtedness, and this right of set-off is not taken away by the bankruptcy law. The enforcement by a bank of its lien or right of set-off, by applying a deposit made honestly in the due course of business, and without intent to prefer the bank to the payment of the depositor's notes in the bank's favor as they mature, does not, though within four months of the bankruptcy proceeding against such depositor, constitute a preference forbidden by the act of July 1, 1898; and you are instructed that, if the defendant bank in this case enforced its lien or right of set-off by applying a deposit of the said I. M. Blitz to his past-due indebtedness to the said defendant bank the bank would have a right to thus apply said deposit even if done within four months before said Blitz filed his petition in bankruptcy."

The request was denied, and an exception taken. If this request had left it to the jury to say whether the deposit in question was made in the usual course of business, it might have been given; but it did not. The last clause simply provided that, if the bank applied the deposit regardless of its character, then the plaintiff could not recover. This is not the law. New York County Bank

v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380; Studley v. Boylston National Bank, 229 U. S. 523, 527, 33 Sup. Ct. 806, 57 L. Ed. 1313; In re George M. Hill Co., 130 Fed. 315, 64 C. C. A. 561, 66 L. R. A. 68 (7th Cir.); Lowell v. International Trust Company, 158 Fed. 781, 86 C. C. A. 137 (2d Cir.); section 68a, Bankruptcy Law. The court, in commenting on said request, charged the jury as follows:

"That is good law where applicable. There is such a thing as a banker's lien; that is to say, if you are a depositor in a bank, the bank has a lien on your deposit, so that it may, under certain conditions, apply the amount of your deposit, on your obligation, but that is only under certain conditions. Banks, just the same as individuals, and all others, are subject to the Bankruptcy Law. So, if the bank has no knowledge, or has no cause to believe or reasonable ground to believe, at the time it makes the application, that the depositor is insolvent, or has no reasonable cause for believing, if they do apply it under the bank's lien, that they will thus obtain a preference over other creditors, why they can make the application. But a bank is just as much subject to the Bankruptcy Law, all kinds of banks, as are individuals. So, if in making the application under their banker's lien, they know at the time they make their application the depositor is insolvent, and know that they will get a greater proportion of their debt by making such application than other creditors will get, of like class, why, of course, they cannot make the application."

To this charge an exception was taken. The effect of the charge of the court was to tell the jury if they found the bank applied the deposit under such circumstances as would ordinarily constitute a voidable preference, then the right of the bank to a set-off under section 68a of the Bankruptcy Law was destroyed. But this would not be true if the transaction was as the bank claimed it to be; that is, a deposit in the usual course of business, and the jury was not so told. The charge as given for all practical purposes took away the bank's defense. New York County Bank v. Massey, supra; Studley v. Boylston National Bank, supra; In re George M. Hill Co., supra; Lowell v. International Trust Company, supra; section 68a, Bankruptcy Law. In Bank v. Massey, supra, the Supreme Court said:

"As we have seen, a deposit of money to one's credit in a bank does not operate to diminish the estate of the depositor, for when he parts with the money he creates at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it. It is not a transfer of property as a payment pledge, mortgage, gift, or security. It is true that it creates a debt, which, if the creditor may set it off under section 68, amounts to permitting a creditor of that class to obtain more from the bankrupt's estate than creditors who are not in the same situation, and do not hold any debts of the bankrupt subject to set-off. But this does not, in our opinion, operate to enlarge the scope of the statute defining preferences so as to prevent set-off in cases coming within the terms of section 68a. If this argument were to prevail, it would in cases of insolvency defeat the right of set-off recognized and enforced in the law, as every creditor of the bankrupt, holding a claim against the estate subject to reduction to the full amount of a debt due the bankrupt receives a preference in the fact that to the extent of the set-off he is paid in full."

Also in Studley v. Boylston National Bank, supra:

"The Bankruptcy Act recognizes this right, and it cannot be taken away by construction, because of the possibility that it may be abused. The remedy against that evil is found in the fact that the trustee is authorized to sue

and recover, if it is shown that after insolvency the money was deposited for the purpose of enabling a bank or other creditor to secure a preference. But to deny the right of set-off, in cases like this, would in many cases make banks hesitate to honor checks given to third persons, would precipitate bankruptcy, and so interfere with the course of business as to produce evils of serious and far-reaching consequence."

It is claimed that, if there was error in the charge of the court, it was not prejudicial, for the reason that the evidence conclusively showed that the deposit of the money was not made in the usual course of business, and therefore a verdict would not have been allowed to stand if rendered in favor of the bank. The trial court, in submitting the case to the jury, used the following language:

"Now, gentlemen, the facts up to a certain point in this case are practically undisputed. That this man Blitz was insolvent at the time he sold his stock of goods to Friedberg and deposited the proceeds of that sale in this bank, which was on the 26th day of December, 1912, as I remember it, from all that has been shown by this evidence, there is no substantial controversy whatever. The question is: Did the bank either know or have reasonable cause to believe, at that time, that this man Blitz was insolvent, and that by making this application on the debts owed by the bankrupt to it it would receive a preference? All the evidence in this case has been offered and received, or almost all of it, for the sole purpose of allowing you, gentlemen of the jury, to judge of that single fact, as to what the bank at that time knew, or what it had reasonable cause to believe—what it should have known."

Again:

"Gentlemen of the jury, the question that you will have to determine will be, to look into the entire case and see whether this bank from all of its dealings had before this time with this bankrupt, from the manner in which its business with this bankrupt had been conducted, in so far as the bank and its officers knew, and from all the other facts and circumstances in the case determine: Did the bank know, or had it reasonable cause to believe the bankrupt was then insolvent and knew that by the application of this fund of $5,000, received in the manner the bank knew it was received, it was receiving a preference over other creditors?"

Nowhere in the charge was the jury told that, if they found that the bank received the deposit in the usual course of business, it could apply the deposit as a set-off against the indebtedness of the bankrupt. Where a trial court submits a case to a jury at all, it should declare the law applicable to the contentions of both sides. We do not feel it to be our duty at this time on an exception to a charge to sift the evidence and determine whether a verdict for the bank could be sustained.

It is urged, however, that the right of set-off as given by section 68a of the Bankruptcy Law does not enlarge the doctrine of set-off, and cannot be invoked in cases where the general principles of set-off would not justify it; that the matter is placed within the control of the bankruptcy court which exercises its discretion upon general principles of equity. Cumberland Glass Company v. De Witt, 237 U. S. 447, 35 Sup. Ct. 636, 59 L. Ed. 1042. This being the law, it is contended that the bank had no authority on its own motion to exercise its right of set-off, but should have submitted a statement of the mutual accounts to the court of bankruptcy and had the set-off allowed if permissible.

In Studley v. Boylston Bank, supra, it was decided that a bank could exercise the right of set-off before bankruptcy by an entry on its books; but, conceding that some action of the court is necessary, the bank in this action was sued by the trustee of the estate of the bankrupt in the court having jurisdiction over the bankrupt estate, and we see no reason why it could not claim the right of set-off in this action and have the matter adjudicated by the court of bankruptcy. As the evidence stood when the case was submitted to the jury below, no reason appeared why the set-off should not be allowed, providing always the deposit was made in the usual course of business, and not a mere formal transaction, to cover up what was in fact and law an unlawful preference.

For error in charging the jury in that portion of the charge excepted to, the judgment is reversed, and a new trial ordered.

AMIDON, District Judge (dissenting).   I am unable to concur in the reversal of the judgment in this case.   Blitz, the bankrupt, was a jeweler at Topeka, Kan.   He was largely indebted to the bank, which had liens upon all his property with the exception of his stock in trade. It also held about $2,000 worth of diamonds, the most valuable quick asset of his stock, as collateral.   For some weeks prior to the sale of his stock to Friedberg, Blitz had been conducting a forced sale.   It had been advertised as a sale on behalf of his creditors, and was in charge of attorneys representing his creditors, and the proceeds of the sale, after paying the expenses of the store, were deposited by these attorneys and not by Blitz.   The bank had been entirely familiar with this sale, and had made arrangements to get a part of the proceeds. At about the time of the conclusion of the forced sale, the bank recommended to Friedberg that he buy the Blitz stock.   Friedberg said he had not the money and the bank offered to furnish it to him.   This it did.   Blitz and Friedberg met at the bank.   The bank gave Friedberg credit for the amount needed.   Blitz delivered him the bill of sale of the stock and fixtures.   Friedberg drew a check for $5,000, the purchase price, and delivered it to Blitz.   He presented this at the window of the bank as a deposit, and received a deposit slip for the amount. This occurred at 4 o'clock in the afternoon, just as the bank was closing   The following morning the bank applied the $5,000 credit produced by the deposit in partial payment of Blitz' indebtedness to it.

Two features show that this transaction was not a deposit in due course:

First. Blitz had no current account at the bank.   The evidence shows clearly that, for more than a year previous to the transaction here involved, his account had been closed.   The last entry in his passbook was December 19, 1911.   Blitz, however, continued to draw checks upon the bank, and send them to his creditors.   When these checks were presented for payment the bank would notify Blitz, and he would come in and take them up with cash.   Neither these checks nor the cash with which they were paid were ever entered in Blitz' account. This is the nature of the account, as shown by the uncontradicted evidence.   Blitz so testified, and he was in no way contradicted by any

officer of the bank. It was a suspicious circumstance that the ledger leaves of the bank showing Blitz' account had mysteriously disappeared.

Second. The bank, rather than Blitz, was the dominating power in the deposit of the $5,000. The bank brought about the sale; it furnished the money, and took scrupulous care that the fund should never get beyond its immediate control.

To apply to such a transaction the doctrines applicable to a regular current account between banker and depositor, such as was involved in New York County Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, and Studley v. Boylston National Bank, 229 U. S. 523, 33 Sup. Ct. 806, 57 L. Ed. 1313, cited in the majority opinion, is to confound things essentially different. This transaction, read in the light of its attendant circumstances, shows clearly that the money was received by the bank as a payment, and that the form of deposit was a mere subterfuge. The history of the transaction, the manner and place in which it was consummated, showed that it was the intent of the bank officers that the money should be immediately applied to the payment of the bank's indebtedness. The fact that this was not done on the evening when the deposit was made, does not change the real character of the transaction, but simply shows an intent to defeat the Bankruptcy Law by a colorable shift, and enable a local bank to appropriate the entire estate of a bankrupt merchant, and leave his mercantile creditors, with claims amounting to more than $14,000, without a farthing. There was, in my judgment, no substantial evidence requiring the trial court to submit to the jury the question whether the transaction was a deposit in the due course of business. Upon the evidence it would have been the plain duty of the court to set aside such a verdict, if returned.

The judgment was right, and it seems to me a miscarriage of justice to reverse it for the mere purpose of seeing whether a jury will do its plain duty.