FOURTH NAT. BANK OF WICHITA, KAN., v. SMITH (two cases).

In re COX–BLODGETT DRY GOODS CO.

(Circuit Court of Appeals, Eighth Circuit. December 11, 1916.)

Nos. 161, 4555

1. BANKRUPTCY ⬤⟳166(3)—CLAIMS OF CREDITORS—"SET-OFF"—"PREFERENCE"—BANK DEPOSITS.

Where a bank, to which a depositor was indebted, after knowledge of the depositor's insolvency, but before a petition in bankruptcy was filed, set off against the indebtedness the amount of deposits made by the depositor in the usual course of business, the transaction was valid as a "set-off," under Bankr. Act July 1, 1898, c. 541, § 68a, 30 Stat. 565 (Comp. St. 1913, § 9652), and was not a "preference," under Bankr. Act, § 60a (Comp. St. 1913, § 9644), since the making of the deposits merely created a relation of debtor and creditor between the bank and the depositor, and the application thereof to the indebtedness involved no transfer of the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251, 255, 257.

For other definitions, see Words and Phrases, First and Second Series, Set-Off; Preference.]

2. BANKRUPTCY ⬤⟳166(3)—CLAIMS OF CREDITORS—SET-OFF—KNOWLEDGE OF INSOLVENCY.

Knowledge by the bank of the insolvency of a depositor at the time of making the set-off does not invalidate such set-off as against the depositor's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251, 255, 257.]

3. BANKRUPTCY ⬤⟳165(1)—CLAIMS OF CREDITORS—SET-OFF—POWER OF PARTIES.

It is permissible for a bank, under proper circumstances, to set off the amount of deposits against the depositor's indebtedness to it, even before a petition in bankruptcy is filed; it not being necessary to await an order of the court, though such set-off may thereafter become subject to review and control by the court.

4. BANKRUPTCY ⬤⟳440—PETITION TO REVISE—QUESTIONS OF LAW.

Where no question of fact arises which is necessary to the decision of the case, but only questions of law, a petition to revise is the proper method of review.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915.]

5. BANKRUPTCY ⬤⟳440—PETITION TO REVISE—APPEAL.

Where, on the face of the record, questions of fact arose which required an appeal to be taken, though such questions did not have to be decided, a claimant in bankruptcy was justified in pursuing its remedy both by petition to revise and by appeal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915.]

Petition to Revise Order of and Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

In the matter of the Cox-Blodgett Dry Goods Company, bankrupt. From an order of the District Court denying the claim of the Fourth National Bank of Wichita, Kan., against O. Z. Smith, as trustee in bankruptcy, unless the bank would pay to the trustee the amount of the bankrupt's deposits set off by it against the indebtedness, the bank

---

appeals, and also petitions to revise the order. Appeal dismissed, petition to revise sustained, and cause remanded, with directions to the District Court to modify its order.

J. G. Carey and C. G. Yankey, both of Wichita, Kan. (R. L. Holmes, W. E. Holmes, R. R. Vermilion, and Earle W. Evans, all of Wichita, Kan., on the brief), for appellant and petitioner.

Jean Madalene, of Wichita, Kan. (S. B. Amidon, E. L. Foulke, and S. A. Buckland, all of Wichita, Kan., on the brief), for respondent and appellee.

Before HOOK, Circuit Judge, and REED and BOOTH, District Judges.

BOOTH, District Judge. By appeal, and also by petition to revise, reversal is sought of the order of the District Court disallowing the unsecured claim of the bank against the estate of Cox-Blodgett Dry Goods Company, bankrupt, except upon the condition that the bank return to the estate the sum of $8,698.40, which sum was found by the court to have been received by the bankrupt as an unlawful preference. The following facts are not in dispute:

On and prior to August 30, 1913, the Cox-Blodgett Dry Goods Company, hereinafter called the company, was in the wholesale dry goods business in Wichita, Kan., and doing a large business with the claimant bank, both as borrower and depositor. On the 30th of August, 1913, the company had on deposit with the bank, subject to check, about $25,000. On that day the bank presented to the company demand notes made by it, amounting to $25,000, and demanded payment. The company refused payment, whereupon the bank charged the checking account of the company with the amount of the notes. On the 2d day of September, 1913, the company applied to the bank for a restoration of its credit as a depositor, and as an inducement to the bank to reinstate its credit, and as security for the amount of indebtedness which the company would owe upon such reinstatement, agreed to assign to the bank a certain mortgage called the Tapp mortgage and to hypothecate a deed to a certain tract of land. As a result of the negotiation, the bank restored on its books the credit in favor of the company, taking new demand notes to evidence the indebtedness, and accepting the securities offered. Thereafter deposits were made by the company with the bank in the usual and regular course of business, and checks drawn against the account, until the 31st day of October, 1913, on which day the company had to its credit as a depositor the sum of $8,698.40. At that time the bank held six demand notes of the company amounting to something over $35,000. No demand for the payment of these notes had been made by the bank; but on the 31st day of October, 1913, information coming to the bank that a petition in bankruptcy against the company either had been filed or was about to be filed, the bank offset on the account of the company so much of its said indebtedness evidenced by the notes as equaled the amount of deposit of the company on the books of the bank, namely $8,698.40. On the same day a petition in bankruptcy was in fact

filed against the company. The bank filed its proof of claim against the company for an unsecured debt of $13,879. The proof of claim set forth that the bank held as security for the payment of said demand notes the mortgage heretofore mentioned valued at $8,600; the deed for the land above mentioned, the equity in which it valued at $4,000; and that credit had been given by the bank upon its claim against the bankrupt company in these amounts, leaving due the sum of $13,879, after the offset of $8,698.40.

To this proof of claim the trustee filed exceptions: First, that the taking of the mortgage above mentioned by the bank amounted to a preferential transfer from the company; second, that the taking of the conveyance above mentioned was also a preferential transfer from the company to the bank; third, that the set-off by the bank of the amount standing to the credit of the company on October 31st, $8,698.40, against the notes owed by the company to the bank, was made by the bank with knowledge of the insolvency of the company, and created a voidable preference. The trustee objected to proof being made of any claim by the bank until said preferences were surrendered.

A hearing was had before the referee, who found that the transaction between the company and the bank on the 2d day of September, 1913, covering the reinstatement of the company's credit upon the books of the bank, and the transfer of the mortgage and the land as security to the bank was not a preferential transfer, within the meaning of the Bankruptcy Act. This conclusion of the referee was approved and affirmed by the District Court. Those conclusions have been acquiesced in by the trustee, and are not before us for review.

The referee further held that the set-off by the bank of the $8,698.40 standing to the credit of the bankrupt company on the books of the bank on October 31, 1913, against the debt of the bankrupt company to the bank, did not constitute an illegal preference, and need not be surrendered by the bank as a condition to proving its claim. Upon a petition of the trustee to review this conclusion of the referee, the District Court reversed the referee, and ordered the claim of the bank disallowed, except upon the condition that the bank should pay over to the trustee the amount of the deposit offset by the bank against the notes. The views of the trial court are indicated by the following excerpts from its decision:

"The act of the bank in making the application was a transfer of the bankrupt property toward the satisfaction of a debt evidenced by the demand notes. This transfer and the right of the bank to make it must be viewed and determined as of the date it occurred, and from what the bank knew or had reasonable cause to believe as to the financial condition of the bankrupt, and by what the bank intended to accomplish by its act. It is true the mere fact that a bank in the usual course of its business, acting under its banker's lien, charges a depositor's account with payment of due or past-due paper made by the depositor and held by the bank, believing or even knowing the depositor at the time is insolvent, will not defeat such transfer. * * * However, * * * no creditor, be it a banking corporation or other person, can take or receive payment from a debtor known at the time to be insolvent, and knowing, or having reasonable cause to believe, by the taking or receiving of such payment it is thereby securing a preference in payment over other creditors of the insolvent debtor of the same class. * * * The question, therefore, pre-

sented on this record, is: Did the bank know, or did it have reasonable cause to believe, at the date it applied the deposit of the bankrupt toward the satisfaction of the demand notes [that the] bankrupt was insolvent, and by such application it would obtain a preference in payment over the other creditors? * * * From all the proofs found in the record, I am entirely persuaded the bank at the time it made application of the deposit toward the payment of the demand notes of the bankrupt, not only knew the now bankrupt company was insolvent, and either on the verge of bankruptcy, or had actually gone into bankruptcy, but that it further knew, or at least had every reasonable cause to believe, after deducting the fair market value of the Tapp note and mortgage and the Oklahoma land, which it was justly entitled to retain and apply on the debt of the bankrupt to it, from the total of such debt, if it should further, as it did, apply the deposit account on the amount of the debt remaining, thus leaving only a small amount due it on the demand notes of the bankrupt, it would thus obtain such a preference in payment over other creditors of the bankrupt estate as would preclude it from proving such small balance as a debt against the estate under the provisions of the Bankruptcy Act, unless it should first surrender such preferential payment."

[1] In our judgment, the conclusions reached by the learned trial court were erroneous in three particulars: (1) In holding that the set-off by the bank was a transfer of the bankrupt's property; (2) in holding that knowledge by the bank of the insolvency of the company at the time of the set-off was a material factor in the situation; (3) in holding that the so-called preference resulting from the set-off was a voidable preference within the meaning of that term as used in the Bankruptcy Act.

In New York County Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, Stege & Bro. had an account in that bank, and the bank held two notes made by them falling due January 26, 1900, amounting to $40,000. On the morning of January 23d, the two notes were renewed, and in the afternoon of the same day a statement was rendered to the bank, which showed the firm to be insolvent. On January 22d, 23d, and 25th, deposits were made to the amount of $6,225.25, and on January 27th the firm filed a voluntary petition in bankruptcy. "At the first meeting of creditors, February 9, 1900, the New York County National Bank filed its claim for $33,790.25. In its proof of claim the bank credited upon one of the notes, which became due on January 26, 1900, the deposit of $6,209.25. The claim was allowed by the referee in the sum of $33,750.25, being $40,000 less the amount on deposit in bank ($6,209.25), and a small rebate of interest on the unmatured notes." The District Court affirmed the order of the referee. The Circuit Court of Appeals reversed the District Court, holding that the set-off of the deposit would amount to a transfer, enabling the bank to obtain a greater percentage due to it than other creditors of the same class, and that the allowance of the claim should be refused unless the preference was surrendered. The Supreme Court of the United States reversed the Circuit Court of Appeals, and in the course of its opinion said:

"It cannot be doubted that, except under special circumstances, or where there is a statute to the contrary, a deposit of money upon general account with a bank creates the relation of debtor and creditor. The money deposited becomes a part of the general fund of the bank, to be dealt with by it as other moneys, to be lent to customers, and parted with at the will of the bank, and the right of the depositor is to have this debt repaid in whole or in part by

honoring checks drawn against the deposits. It creates an ordinary debt, not a privilege or right of a fiduciary character. * * * It is true that the findings of fact in this case establish that at the time these deposits were made the assets of the depositors were considerably less than their liabilities, and that they were insolvent; but there is nothing in the findings to show that the deposit created other than the ordinary relation between the bank and its depositor. The check of the depositor was honored after this deposit was made, and for aught that appears Stege Bros. might have required the amount of the entire account without objection from the bank, notwithstanding their financial condition."

The court held that the set-off was rightly made under section 68a of the Bankruptcy Act. In answer to the claim that under section 60a this transaction amounted to the giving of a preference to the bank, the court, after stating that a transfer, within the meaning of the Bankruptcy Act, must be one diminishing the assets of the bankrupt, used the following language:

"As we have seen, a deposit of money to one's credit in a bank does not operate to diminish the estate of the depositor, for when he parts with the money he creates at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it. It is not a transfer of property as a payment, pledge, mortgage, gift, or security. It is true that it creates a debt, which, if the creditor may set it off under section 68, amounts to permitting a creditor of that class to obtain more from the bankrupt's estate than creditors who are not in the same situation and do not hold any debts of the bankrupt subject to set-off. But this does not, in our opinion, operate to enlarge the scope of the statute defining preferences, so as to prevent set-off in cases coming within the terms of section 68a. If this argument were to prevail, it would in cases of insolvency defeat the right of set-off recognized and enforced in the law, as every creditor of the bankrupt holding a claim against the estate subject to reduction to the full amount of a debt due the bankrupt receives a preference in the fact that to the extent of the set-off he is paid in full."

In the case of Studley v. Bank, 229 U. S. 523, 33 Sup. Ct. 806, 57 L. Ed. 1313, the Collver Company had a general deposit and checking account with the Boylston Bank. It also owed the bank $25,000, represented by five notes maturing September 12th, 20th, 30th, October 3d, and October 14th. The first three notes were paid by check on the Boylston Bank, and the note due October 3d was charged by the bank to the company's deposit account, and on the same day a renewal note for $2,500 was discounted; and the note falling due October 14th, was, on becoming due, also charged by the bank to the deposit account. The Collver Company continued to make deposits and draw checks, and on December 16, 1910, a petition in bankruptcy was filed against it. The trustee brought suit against the bank to recover $22,500, claiming that it had notice of the Collver Company's insolvency, and that the payments were transfers which had operated to give the bank a preference. The bank claimed that the payments were simply set-offs upon the mutual account, and did not constitute a preference within the meaning of the Bankruptcy Act. The referee before whom the case was tried sustained the bank's claim of set-off. This decision was affirmed both by the District Court and the Circuit Court of Appeals. The referee found as a fact that the bank had no reasonable cause to believe that a preference would result. The District Court made no findings of fact in this respect, nor did the Circuit Court of Appeals.

A finding was made by the referee, the District Court, and the Circuit Court of Appeals that the deposits were made in due course of business, and without any intent to prefer the bank. The Supreme Court, in affirming the judgment of the Court of Appeals, said:

"We find nothing in the record to indicate that the deposits were made for the purpose of enabling the bank to secure a preference by the exercise of the right of set-off. The case, therefore, comes directly within the decision in New York County National Bank v. Massey, 192 U. S. 138 [24 Sup. Ct. 199, 48 L. Ed. 380], where $3,884 deposited by an insolvent customer, in good faith, four days before the filing of the petition against him was allowed to the bank by way of set-off on notes of the bankrupt held by it. An effort is made to distinguish that case from this, by calling attention to the fact that here, by checks drawn on the account or notes charged to the account, the parties themselves voluntarily made the set-off before the petition was filed, while in the Massey Case the trustee, under the supervision of the referee stated an account and allowed the set-off as permitted by section 68a, which provides 'that in all cases of mutual debts, or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.' That section did not create the right of set-off, but recognized its existence and provided a method by which it could be enforced, even after bankruptcy."

In reference to the objection that the set-offs had been made by the parties rather than by the trustee in the bankruptcy proceedings, the court said:

"If this set-off of mutual debts has been lawfully made by the parties before the petition is filed, there is no necessity of the trustee doing so. If it has not been done by the parties, then, under command of the statute, it must be done by the trustee. But there is nothing in section 68a which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted. * * * It cannot have been illegal for the parties on September 12th, 20th, 30th, and October 3d and 14th, to do what the law would have required the trustee to do in stating the account after the petition was filed on December 16, 1910. No money passed in either instance; for, whether the checks for $5,000 were paid, or notes for $5,000 were charged, was, in either event, a book entry equivalent to the voluntary exercise by the parties of the right of set-off."

In the case of Continental Trust Co. v. Chicago Title Co., 229 U. S. 435, 33 Sup. Ct. 829, 57 L. Ed. 1268, one Prince owed the Federal Trust & Savings Bank, the predecessor of the Continental Company, on February 14, 1905, about $37,000. The bank had reasonable cause to believe that Prince was insolvent from and after February 10th, and during the transactions from that date up to and including February 15th. The bank had issued margin certificates to Prince, which evidenced indebtedness of the bank to Prince, and Prince had put these up as security for certain open trades. Prince, on February 14th, transferred these open trades to Anderson & Co. On February 15th, Anderson & Co., substituted its own securities in place of Prince's margin certificates, thereby releasing the latter, which were thereupon returned to the bank, and by it set off against Prince's indebtedness. On February 10th, the bank had called for payment of loans made to Prince. The money not being paid, the bank applied the sum of $3,095, then standing as a deposit credit on the books of the bank in favor of Prince. Thereafter deposits were made by Prince, and checks were drawn against the deposit until February 14th, when the bank applied the bal-

ance of $575.79 on the general indebtedness of Prince to the bank. A petition in bankruptcy was filed against Prince February 15th. The trustee in bankruptcy brought suit to recover, as being preferential transfers, first, the sum of $4,250, the amount of the margin certificates; and, secondly, the balance of $575.79, which had been applied by the bank against Prince's general indebtedness on February 14th. The District Court held the trustee entitled to recover, and this was affirmed by the Circuit Court of Appeals, but was reversed by the Supreme Court, the latter court in its opinion using the following language:

"To constitute a preferential transfer within the meaning of the Bankruptcy Act there must be a parting with the bankrupt's property for the benefit of the creditor and a consequent diminution of the bankrupt's estate. New York County National Bank v. Massey, 192 U. S. 138, 147 [24 Sup. Ct. 199, 48 L. Ed. 380]; Newport Bank v. Herkimer Bank, 225 U. S. 178, 184 [32 Sup. Ct. 633, 56 L. Ed. 1042]. * * * By the arrangement made, Anderson & Co. took hold of the situation, and, carrying out the deals upon which Prince was bound, cleared the certificates of any obligation to others, and they thereby became payable to Prince. What was done did not in fact diminish the estate of Prince otherwise available to the creditors in the bankruptcy administration, for the traders holding them would have had the benefit of the deposits under the terms of the certificates and the rules of the Board of Trade. It therefore appears that this essential element of a preferential transfer within the meaning the Bankruptcy Act, diminution of the bankrupt estate, is wanting. The fact that what was done worked to the benefit of the creditor and in a sense gave him a preference is not enough, unless the estate of the bankrupt was thereby diminished."

In reference to the application of the deposit credit of $575.79, the court said:

"As to the $575.79, we think the right to set off this deposit is established by the principles laid down in New York County National Bank v. Massey, supra. Here there was a deposit subject to be checked out by the bankrupt for specific purposes. The money was not placed in the bank with a view to giving it a benefit, except indirectly, because of the deposit. It was subject to Prince's check, and all of it might have been checked out for the purposes intended.".

In our opinion, these three foregoing cases are decisive of the case at bar. In the present case items of deposit from September 2d to October 31st were received in the usual course of business. There is no evidence that a deposit was built up for the benefit of the bank, and there is no claim made to that effect. Checks were drawn against the deposit account, and the amount of the deposit account varied during the above period from $18,000 to $5,000.

The cases of Mechanics' & Metals National Bank v. Ernst, 231 U. S. 60, 34 Sup. Ct. 22, 58 L. Ed. 121, National City Bank v. Hotchkiss, 231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. 115, and In re National Lumber Co., 212 Fed. 928, 129 C. C. A. 448, are cited by counsel for the trustee. But in all these cases the deposits in question were not received in the usual course of business, but were "built up" or deposited under unusual circumstances, for the express purpose of giving a preference to the bank. The so-called deposits were deposits merely in name, but in fact were payments.

In the case at bar the referee found:

"In the present matter there is no circumstance proven which would justify the conclusion that the bankrupt had been accumulating funds on deposit for the purpose of liquidating the bank's debt. On the contrary, every circumstance indicates that the amount to the credit of the bankrupt was a balance resulting from transactions in the usual, ordinary course of business."

This distinction between deposits made in the usual course of business, even by an insolvent depositor, and deposits made for the purpose of giving a preference to a bank, has been recently emphasized by this court in German-American State Bank v. Larimer, 235 Fed. 501, —— C. C. A. ——. The right of set-off being expressly recognized in the former instance, but not in the latter.

[2] It is true that in the instant case the District Court, in holding that, when attempting to make the offset, the bank knew that the company was insolvent, and had reason to believe that by making the set-off a preference would result to the bank. But knowledge by the bank of the insolvency of a depositor at the time of making the set-off does not invalidate such set-off. Indeed, in most cases such knowledge is the very reason for making the set-off. In the Massey Case, and in the Continental Bank Case, supra, the bank knew of the insolvency of the depositor before the set-off was made.

Counsel seeks to distinguish the Massey Case from the case at bar by the fact that the set-off in the Massey Case was not made until after the adjudication in bankruptcy. In the Continental Bank Case, however, the set-off was made before the petition in bankruptcy was filed, and the same was true in the Larimer Case.

As to the conclusion reached by the District Court that the bank had reasonable cause to believe that a preference would result by the making of the set-off, it is sufficient to say that such preference resulting from a set-off is not a preference forbidden by the Bankruptcy Act. The preference forbidden by the Bankruptcy Act is one resulting from a transfer which diminishes the assets of the bankrupt; but, as held in the Massey Case and in the Studley Case, supra, a set-off does not constitute such transfer. In reference to this matter, the court in the Massey Case said:

"If this argument were to prevail, it would in cases of insolvency defeat the right of set-off recognized and enforced in the law, as every creditor of the bankrupt holding a claim against the estate subject to reduction to the full amount of a debt due the bankrupt receives a preference in the fact that to the extent of the set-off he is paid in full."

In Germania Savings Bank & Trust Co. v. Loeb, 188 Fed. 285, 110 C. C. A. 263, the court, in considering a similar situation, said:

"It is also true that the application upon the bank's debt of this balance of deposits, accumulated after notice of possible insolvency of the Mercantile Company, in fact enables the bank to obtain a greater dividend on its claim than creditors generally obtain. But, unless it was the intention of the parties to so accumulate deposits for the purpose of preferring the bank, the transaction did not create a preference under the Bankruptcy Act."

In the Larimer Case the trial court gave the following charge, amongst others, to the jury:

"So, if in making the application under their banker's lien, they know at the time they make their application the depositor is insolvent, and know that they will get a greater proportion of their debt by making such application than other creditors will get, of like class, why, of course, they cannot make the application."

In reference to this charge, the court said:

"To this charge an exception was taken. The effect of the charge of the court was to tell the jury, if they found the bank applied the deposit under such circumstances as would ordinarily constitute a voidable preference, then the right of the bank to a set-off under section 68a of the Bankruptcy Act was destroyed. But this would not be true if the transaction was as the bank claimed it to be; that is, a deposit in the usual course of business. And the jury was not so told. The charge as given for all practical purposes took away the bank's defense."

It is claimed by counsel for the trustee in the instant case that the notes were not due at the time of the alleged set-off, and that therefore the attempted set-off was invalid. This contention cannot be sustained. In the Massey Case, supra, the note against which the set-off was made was not due. See, also, Germania Savings Bank & Trust Co. v. Loeb, supra.

[3] It is also claimed by counsel for the trustee that the set-off can only be made by the court, and not by the bank itself, and the case of Cumberland Glass Co. v. De Witt, 237 U. S. 447, 35 Sup. Ct. 636, 59 L. Ed. 1042, is cited in support of this contention. It was distinctly held in the Studley Case, supra, that a bank could exercise the right of set-off before bankruptcy. This was done in the case of Continental Bank v. Chicago Title Co., supra, and also in the case of German-American State Bank v. Larimer, supra. What the Cumberland Case decided was that the provisions of section 68a were not automatic, and that, after the commencement of bankruptcy proceedings, set-off was under the control of the bankruptcy court, and that it was not mandatory on the court to make a set-off or to pass upon the question, unless the parties interested took the proper steps to obtain such relief. No intimation, either in the majority or the minority opinion, is given that the parties themselves may not exercise the right of set-off prior to the petition in bankruptcy. It may be conceded that the bankruptcy court has power to investigate and review set-offs made by the parties themselves prior to the commencement of bankruptcy proceedings; but no such question as this is involved in the case at bar.

[4, 5] Upon the present record no question of fact arises which we consider necessary to the decision of the case, but merely questions of law; therefore a petition to revise is the proper method of review. It may not be amiss, however, to add that upon the face of the record questions of fact did arise which, if they were to be reviewed, required an appeal to be taken. Smith-Wallace Shoe Co. v. Ternes, 235 Fed. 282, —— C. C. A. ——. The claimant bank was therefore justified in pursuing its remedy both by a petition to revise and by appeal.

In view of the conclusions we have reached, however, the appeal will be dismissed. The petition to revise is sustained, and the cause re-

manded, with directions to the District Court to modify its order of June 30, 1915, in accordance with the views herein expressed, and allow the bank to file its proof of claim without surrendering the $8,698.-40, balance of the company's deposit on October 31, 1915.