**KIRKMAN v. FARMERS' SAV. BANK OF BOYDEN, IOWA.**

Circuit Court of Appeals, Eighth Circuit. September 28, 1928.

No. 8093.

Charles M. Stilwill, of Sioux City, Iowa (Henry C. Shull, of Sioux City, Iowa, on the brief), for plaintiff in error.

A. J. Kolyn, of Orange City, Iowa (P. D. Van Oosterhout, of Orange City, Iowa, on the brief), for defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and POLLOCK, District Judge.

BOOTH, Circuit Judge. This is a writ of error to a judgment denying recovery to plaintiff in error against defendant in error (hereafter called the Boyden Bank), on account of certain collection items which had been sent to it by the First National Bank of Sheldon (hereafter called the Sheldon Bank), and which had been collected and set off by the Boyden Bank against an alleged indebtedness to it of the Sheldon Bank. The judgment also allowed recovery by the Boyden Bank on its counterclaim which set up the balance of the alleged indebtedness of the Sheldon Bank.

The case was tried to the court, stipulation in writing waiving a jury having been duly signed and filed. The cause was submitted upon an agreed statement of facts, from which the following excerpts are taken; jurisdictional and merely formal allegations being omitted:

"* * * Between the eighteenth day of March, 1927, and the twenty-fourth day of March, 1927, inclusive, the First National Bank of Sheldon, Iowa, in regular course of its banking business received and paid out in cash or credited to the account of its respective customers * * * various items of checks amounting in the aggregate to the sum of $3,724.11, * * * all of which checks were drawn upon the respective accounts of the makers thereof in the defendant bank, or in the other bank located in said Town of

Boyden; and in the regular course of its banking business the said checks were each day by the said First National Bank of Sheldon, Iowa, enclosed with what in bank parlance is denominated a cash letter and were transmitted by United States mail to the defendant bank to be collected and the proceeds remitted to the said First National Bank of Sheldon, Iowa, as soon as might be done in regular course of banking business. * * * .

"That remittances of the said items were not made by the defendant bank for reasons hereinafter recited and that at the time the above named receiver took possession of the said First National Bank of Sheldon, the books of that institution showed the aggregate of said items to be due and owing said bank from the said defendant bank as transit items so forwarded as aforesaid. * * *

" * * * Prior to the 20th day of August, 1925, the First National Bank of Sheldon, Iowa, had among its assets the note of one L. D. Frisbee in the principal sum of Four Thousand Dollars ($4,000.00) bearing interest at seven per cent. (7%) per annum, * * * said L. D. Frisbee, maker of said note, was a stockholder of the First National Bank of Sheldon, and was assistant cashier of said bank, and remained a stockholder and assistant cashier of same up to the date that said bank closed as hereinabove recited; that the said L. D. Frisbee as collateral for the note above put up with said bank his stock certificate for fifty (50) shares of the corporate stock of First National Bank of Sheldon.

" * * * About said 20th day of August, 1925, defendant bank had on hand a surplus of funds over and above the ordinary requirements of its customers, and at a directors' meeting of its Board of Directors, which was also attended by F. E. Frisbee, the advisability of investing such surplus in bonds was discussed. Said F. E. Frisbee suggested that the First National Bank of Sheldon could use some of this surplus and that in this way defendant bank could earn six per cent. on same instead of the lower rate which could be earned if same be invested in bonds; that at that time the proper officers of defendant bank entered into an oral agreement with F. E. Frisbee as president of the First National Bank of Sheldon, Iowa, whereby and pursuant to the terms thereof it was agreed that the First National Bank of Sheldon should assign and deliver to defendant bank certain of the bills receivable of said First National Bank of Sheldon, such bills receivable to be selected by said National Bank of Sheldon, and that upon receipt of such bills receivable defendant bank would remit to or credit the First National Bank of Sheldon with the face amount of such bills receivable; that defendant bank would receive from the First National Bank six per cent. interest on the amounts so paid over on account of said bills receivable for whatever length of time defendant bank carried said bills receivable; that said First National Bank of Sheldon should in all cases attend to the collection of such bills receivable, both principal and interest, or to any renewals of the same, said First National Bank of Sheldon to receive the full interest on said notes as called for according to their terms; that in case of objection to any such paper, defendant bank might return same, and the Sheldon bank upon such return of same would immediately credit the account of defendant bank with the amounts thereof; that defendant bank was not to notify the makers of said notes when same were due, or to become due, but that upon maturity of said notes defendant bank should return said notes to the First National Bank of Sheldon, which Sheldon bank would then attend to the further handling of such obligations, and the defendant bank upon the return of such paper would be entitled to credit for the amount of same plus six per cent interest; that pursuant to such understanding and agreement, various notes of the First National Band of Sheldon, Iowa, executed to it by various of its customers at divers times between the making of said agreement and the closing of said bank, were transferred and delivered to defendant bank; that as high as Forty Thousand Dollars ($40,000.00) worth of paper was at one time carried by defendant bank under the above agreement and handled between said banks under said agreement; * * * one letter of transmission connected with one of the transactions being in words and figures as follows:

" 'June 18–1926.

" 'Mr. S. G. Vanden Brink, Cashier Farmers Savings Bank, Boyden, Iowa.

" 'Dear Sir: I am enclosing some paper to use a part of your excess reserve and with the understanding that if any objection is raised to any of the enclosed notes they be returned to us immediately.

" 'Under the conditions, that this paper is of such a character that it can be collected at once if needed, six per cent. is an exceptionally good rate of interest and we will allow you that rate from this date and the additional interest to go to the First National

860

Bank when notes are paid. If you were buying commercial paper in Chicago at this time the rate would be below four per cent.

"'Yours very truly,     F. E. Frisbee, President.

" 'Enclosure
FEF:OMA'

"That among the bills receivable delivered by First National Bank of Sheldon to defendant bank under the agreement and arrangements above set out was the said note of L. D. Frisbee above referred to; that on receipt of said note by defendant bank the same was by it entered upon its bills receivable, and upon such delivery by the First National Bank of Sheldon the proceeds thereof were entered on its books to the account of defendant bank; that the stock certificates securing said note were also by First National Bank forwarded with said note to defendant bank as collateral security for same; that at the maturity of said note, same was by defendant bank returned to the First National Bank of Sheldon, who obtained a renewal note therefor, making said renewal note payable direct to defendant bank, and that said renewal note was thereupon by First National Bank returned to defendant bank, a true copy of said note being attached to this stipulation, the number 16244 thereon being assigned to said note by defendant bank, under which number it was entered as one of its bills receivable; that said note was received by defendant bank on September 7, 1926, and entered on its bills receivable on said date.

"That on or about the 7th day of March, 1927, after the maturity of said note, and six months after said date and the date of its receipt by defendant bank, defendant bank forwarded same, together with the collateral securing same, by United States mail to the First National Bank of Sheldon, directing said Sheldon bank to credit defendant bank with the amount of said note, Four Thousand Dollars and six months interest on same at six per cent. $120.00; that said note was duly received by First National Bank of Sheldon, Iowa, on or about the 7th day of March, 1927, but that no credit was given on the books of said First National Bank for the amount of said note and interest, and that said note remained in the offices of the First National Bank of Sheldon, Iowa, and on the desk of F. E. Frisbee, President, until the day when the Board of Directors of said First National Bank resolved to close same as hereinabove set out on the 24th day of March, 1927.

"During the said interim, repeated demands were made by the defendant for payment or credit of the amount of said note as aforesaid, but the said First National Bank of Sheldon, notwithstanding, neglected and refused so to pay or credit the same, and just prior to its suspending business as aforesaid deposited the said note in an envelope which was directed and transmitted by United States mail to defendant and that on the receipt of the same, on the morning of March 25, 1927, after the Comptroller had so taken charge as aforesaid, the said note was returned by mail by the defendant bank to the Examiner in Charge of the affairs of said First National Bank and has since been retained by the receiver; that the note remains wholly unpaid and the defendant bank has received no credit for the proceeds on the books of the First National Bank of Sheldon, or otherwise.

"That the above named receiver claims no interest in the above note, and that the same is not an asset of his trust, and has offered to return and is now willing to deliver the same to defendant bank.

"That on the 23rd day of March, 1927, the defendant advised the First National Bank of Sheldon, that it was holding up the cash letters aforesaid to apply on the indebtedness due it from the First National Bank of Sheldon on account of the said note, and it has failed and refused to remit the proceeds of the above mentioned cash items by reason of its claim that it was and is entitled to credit for the principal of the said L. D. Frisbee note, plus interest at 6% as aforesaid and claims that it was and is accordingly entitled to withhold said remittances as an offset against the proceeds of said note, said note being in words and figures as follows."

The statement of facts then sets out the renewal note, which is in the usual form of a collateral note in use in Iowa.

The judgment as entered contained recitals of many of the stipulated facts, and concluded as follows:

"The Court therefore finds the facts as stipulated, and adjudges that the defendant was legally entitled to make the application of the cash items as stated, and that the plaintiff's petition should be dismissed.

"It is therefore Ordered and Adjudged that the plaintiff's petition be and the same is hereby dismissed, and that the defendant have and recover of the plaintiff on its counter claim Four Hundred Three and 44/100 Dollars, and its costs in the sum of $5.00, to be taxed by the Clerk of this Court. To all of which the plaintiff duly excepts."

When a case is tried upon an agreed stip-

ulation of facts, the question whether the facts are sufficient to support the judgment is open to review on writ of error, though neither a finding nor declaration of law are requested. Hipple v. Bates County, 223 F. 22 (C. C. A. 8), certiorari denied 241 U. S. 672, 36 S. Ct. 723, 60 L. Ed. 1231; Lehnen v. Dickson, 148 U. S. 71, 73, 13 S. Ct. 481, 37 L. Ed. 373; Wayne County v. Kennicott, 103 U. S. 554, 26 L. Ed. 486; Blair v. United States (C. C. A.) 241 F. 217, 230; Mutual Life Ins. Co. v. Kelly, 114 F. 268 (C. C. A. 8).

### Do the Facts Support the Judgment?

■ The oral agreement made by the two banks in the summer of 1925, and their transactions had pursuant thereto, are the pivotal facts in the case. Whether the result constituted a sale of commercial paper with a guaranty of payment, or a borrowing with the commercial paper as collateral, we think is not of vital importance. The statement of agreed facts expressly alleges that the original note of L. D. Frisbee was delivered by the Sheldon Bank to the Boyden Bank under the oral agreement of August, 1925, and the question is: Was the transaction valid?

It is to be noted that the Sheldon Bank received a direct and substantial benefit on all the notes it delivered to the Boyden Bank under the oral agreement. This fact distinguishes the case of Live Stock State Bank v. First National Bank (D. C.) 300 F. 945, relied upon by plaintiff in error; and brings the case at bar within the rulings in the following cases, holding such transactions valid: Ellis v. Citizens' Nat. Bank, 25 N. M. 319, 183 P. 34, 6 A. L. R. 166; Citizens' Nat. Bank v. Appleton, 216 U. S. 196, 30 S. Ct. 364, 54 L. Ed. 443; People's Bank v. Nat. Bank, 101 U. S. 181, 25 L. Ed. 907; First Nat. Bank v. Mott Iron Works, 258 U. S. 240, 42 S. Ct. 286, 66 L. Ed. 593; U. S. Nat. Bank v. First Nat. Bank, 79 F. 296 (C. C. A. 8), aff'd 174 U. S. 125, 19 S. Ct. 628, 43 L. Ed. 920. In the case last cited this court in its opinion said:

"The public interest requires that the same presumptions should attend an indorsement made by the president of a bank which exist in favor of an indorsement made by a cashier, and that banks should be held bound by acts of that nature when done by either of such officers in the ordinary course of business. Aside from these considerations, we think that it has been settled, so far as the federal courts are concerned, by the decision in People's Bank v. National Bank, 101 U. S. 181 [25 L. Ed. 907], that the president of a national bank, by virtue of his office, does possess the power to bind his bank by a contract of indorsement or guaranty, made in the usual course of business."

And the Supreme Court in affirming the case said (page 143 of 174 U. S. [19 S. Ct. 635]):

"The very object of banking is to aid the operation of the laws of commerce by serving as a channel for carrying money from place to place, as the rise and fall of supply and demand require, and it may be done by rediscounting the bank's paper or by some other form of borrowing. Curtis v. Leavitt, 15 N. Y. 1 [9]; First National Bank v. National Exchange Bank, 92 U. S. 122 [23 L. Ed. 679]; Cooper v. Curtis, 30 Maine, 488.

"A power so useful cannot be said to be illegitimate, and declared as a matter of law to be out of the usual course of business, and to charge everybody connected with it with knowledge that it may be in excess of authority. It would seem, if doubtful at all, more like a question of fact, to be resolved in the particular case by the usage of the parties or the usage of communities."

■ In the case at bar, when the commercial paper was returned by the Boyden Bank to the Sheldon Bank at maturity, there existed between the two banks the relation of debtor and creditor. This, we think, is beyond dispute in view of the provision of the agreement "that upon the maturity of said notes defendant bank (the Boyden Bank) should return said notes to the First National Bank of Sheldon, which Sheldon Bank would then attend to the further handling of such obligations, and the defendant bank upon the return of such paper would be entitled to credit for the amount of same plus six per cent. interest." This wording of the agreement and the practice under the agreement both make it clear that on the return of the paper at maturity the Sheldon Bank was the debtor of the Boyden Bank to the face amount of the paper plus 6 per cent. interest.

■ But it is contended that, even if this result were true as to the first note of L. D. Frisbee, yet when the renewal note was made payable to the Boyden Bank instead of to the Sheldon Bank, a novation took place and Frisbee became debtor to the Boyden Bank, and the Sheldon Bank was eliminated and discharged of its obligation. We cannot agree with this contention. One of the indispensable requisites of a novation is that the original creditor shall release the original debtor. As applied to the case at bar: That the Boyden Bank should release the Sheldon Bank from its obligation in connection with

the original note. 29 Cyc. 1133, 1139; Bohning v. Caldwell (C. C. A.) 10 F.(2d) 298. There is nothing in the stipulation of facts to support a conclusion that the Boyden Bank discharged the Sheldon Bank from its obligation on the original note. The mere acceptance by the Boyden Bank of the new note payable to itself would not alone discharge the Sheldon Bank. There must be some additional fact or facts which would indicate such an intention on the part of the Boyden Bank. The burden of proving a novation was on the Sheldon Bank and its receiver. 29 Cyc. 1139. Not only the additional facts to support such an intention are absent, but the additional facts that do appear strongly disprove such intention. This original note was returned to the Sheldon Bank at maturity. The Sheldon Bank sent the renewal note to the Boyden Bank. There is nothing in the stipulated facts tending to show that the Sheldon Bank requested that the renewal note be eliminated from the oral agreement, or that the Sheldon Bank wished to be relieved from its obligation in connection with the original note; nothing to indicate that the Sheldon Bank did not expect to collect the renewal note at its maturity and retain the excess interest over 6 per cent. At the time of the renewal there was no direct dealing by the Boyden Bank with the maker of the note. The new note was procured by the Sheldon Bank and sent by it to the Boyden Bank. The extension of time was thus consented to by the Sheldon Bank and the form of the note was also consented to by that bank. The obligation of the Sheldon Bank on the old note was accordingly not discharged. First Nat. Bank v. Yowell, 155 Tenn. 430, 294 S. W. 1101, 52 A. L. R. 1411, and note page 1416; 8 C. J. 449. The renewal note was treated by the Boyden Bank in the same way as the original note. When due, it was returned to the Sheldon Bank; and in returning it, the Boyden Bank demanded credit for the face amount of the note and 6 per cent. interest, not 7 per cent. which the note bore. This was in accord with the oral agreement. The Sheldon Bank received the renewal note and kept it for 17 days without denying its own liability thereon. Not until it was about to close its doors did the Sheldon Bank return the note to the Boyden Bank. That bank promptly returned it again to the examiner in charge of the Sheldon Bank.

■■ We think that all of the stipulated facts are consistent only with the conclusion that there was no novation at the time of the making of the renewal note, and with the further conclusion that the renewal note stood on the same basis as the original note and was governed by the provisions of the oral agreement between the two banks. This being so, it follows that when the renewal note was returned to the Sheldon Bank at maturity, that bank was the debtor of the Boyden Bank to the amount of the note plus 6 per cent. interest; and that the Boyden Bank thereafter exercised its plain legal right in making the set-off of the amount of the collection items. Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Schuler v. Israel, 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707; Geo. D. Harter Bank v. Inglis (C. C. A.) 6 F.(2d) 841; Jandrew v. Guaranty State Bank (C. C. A.) 294 F. 530; American Bank v. Johnson (C. C. A.) 245 F. 312; Fourth Nat. Bank v. Smith, 240 F. 19 (C. C. A. 8); German-American State Bank v. Larimer, 235 F. 501 (C. C. A. 8); Germania Sav. Bank & Tr. Co. v. Loeb (C. C. A.) 188 F. 285; Platts v. Metropolitan Nat. Bank, 130 Minn. 219, 153 N. W. 514; Wunderlich v. Merchants' Nat. Bank, 109 Minn. 468, 124 N. W. 223, 27 L. R. A. (N. S.) 811, 134 Am. St. Rep. 788, 18 Ann. Cas. 212; Sweetser v. People's Bank, 69 Minn. 196, 71 N. W. 934; Stolze v. Bank of Minn., 67 Minn. 172, 69 N. W. 813. And see note 43 A. L. R. 1328.

No contention is made by plaintiff in error that the judgment in favor of the Boyden Bank on its counterclaim was not justified if the Sheldon Bank was debtor to the Boyden Bank by reason of the returned renewal note.

We hold that the judgment of the trial court was correct, and it is affirmed.