## FEDERAL RESERVE BANK OF MINNEAPOLIS v. FIRST NAT. BANK OF EUREKA, S. D.

(District Court, D. South Dakota, N. D. September 2, 1921.)

### No. 385.

**1. Banks and banking ⊙288½, New, vol. 11A Key-No. Series—Under Federal Reserve Act indorsement of member bank to Reserve Bank creates primary liability.**

Under the Federal Reserve Act, providing that, in case of rediscounted notes "upon which suit is brought, the bank waives presentment, demand and protest," and that the indorsement of member bank shall "be deemed a waiver of demand notice and protest by such bank as to its own indorsement, exclusively," when a member bank deposits paper with the Reserve Bank, it is intended that there shall be a primary liability.

**2. Banks and banking ⬤≈288½, New, vol. 11A Key-No. Series—Under Federal Reserve Act, Reserve Bank has same rights against receiver as against insolvent bank.**

In an action by Reserve Bank on notes discounted by a member bank, the appointment of a receiver for the member bank puts the receiver in the same position as the insolvent bank, and plaintiff had the right to make proof of the member's absolute liability on rediscounted paper, and upon proof acquired a vested interest in the trust fund in the hands of the receiver for the creditors.

**3. Bankruptcy ⬤≈314(1)—Receivers ⬤≈147—Debts provable though unmatured.**

Unmatured debts are provable both in bankruptcy and receiverships.

**4. Banks and banking ⬤≈288½, New, vol. 11A Key-No. Series—In proving claims on notes indorsed to Reserve Bank credits allowable to member bank as set-off.**

In an action by a Reserve Bank on an insolvent member's rediscounted notes, that plaintiff's claims matured after the receiver's appointment did not affect the right of set-off, and in proving the claims credits in favor of the insolvent are deducted.

**5. Banks and banking ⬤≈288½, New, vol. 11A Key-No. Series—Member bank held chargeable with proceeds of checks forwarded for collection.**

In view of Federal Reserve Act, § 16, as to a Reserve Bank's exercising the function of a clearing house, and the Federal Reserve Board rule requiring that the member bank provide funds to cover at par all checks received from or for the account of the Reserve Bank, *held*, that a member bank is absolutely liable to a Reserve Bank for the proceeds of checks forwarded the member for collection and paid to the member bank.

At Law. Action by the Federal Reserve Bank of Minneapolis against the First National Bank of Eureka, S. D., Paul C. Keyes, receiver. Findings and judgment for plaintiff.

A. Ueland, of Minneapolis, Minn., for plaintiff.

J. N. Johnson, of Canby, Minn., for defendant.

ELLIOTT, District Judge. I have determined the issues of law presented in Re Federal Reserve Bank of Minneapolis v. First National Bank of Eureka, S. D., in favor of the plaintiff.

I find no material fact controverted in the record. The issues are issues of law. The rights of the plaintiff must necessarily be determined in the light of the provisions of the laws of the United States, and especially an act of Congress approved December 23, 1913, generally referred to as the Federal Reserve Act (38 Stat. 251), together with the rules and regulations established thereunder.

[1] It is the first contention of the defendant with reference to the 19 promissory notes in the first 19 causes of action of plaintiff's complaint that the liability is only a contingent liability, and that neither of the notes mentioned in the separate causes of action, with the defendant's indorsement thereon, can be made the basis of a claim against the receiver until the defendant's liability thereon has become absolute. He further contends that the defendant's liability does not become absolute until it is definitely ascertained that the makers or prior indorsers thereon are insolvent, so that the note cannot be collected from the maker or prior indorser.

⬤≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

If the purpose and intent of the statutes and rules and regulations above referred to are to be recognized, it is the evident intent and purpose to protect the bank in its service, and the advancement of funds to member banks, and upon the receipt of the notes of the bank and collateral notes with the indorsement of the bank. It seems clear that the intent and purpose of the act and rules and regulations is to throw every protection around the Reserve Bank, and to give it the advantage of a right to proceed against the bank that indorses the paper. Therefore, when the member bank deposits the paper with the Reserve Bank, it is intended that there shall be a primary liability. This is true because it is provided that in case of rediscounted notes "upon which suit is brought, the bank waives presentment, demand and protest." And this is true without the formality of indorsement upon the notes, because the Federal Reserve Act provides that the indorsement of a member bank shall "be deemed a waiver of demand, notice and protest by such bank as to its own indorsement, exclusively."

[2] What is the result of such an indorsement? What is the purpose of this provision? It is to relieve the obligation of the usual conditions, and, when relieved of these usual conditions, it becomes and is an absolute obligation on the part of the bank rediscounting and indorsing the paper to pay the same upon the date fixed. At maturity the Reserve Bank in this case had a right of action against the indorser without joining the maker. Certainly the fact of the insolvency of the indorser and the appointment of a receiver puts the receiver in no other or different or better position than the insolvent bank would have been. This plaintiff had a perfect right to make proof of this absolute liability of the insolvent bank upon each of the notes containing the indorsement of such bank, and upon proof of such claim the Reserve Bank thereby acquired a vested interest in the trust fund in the hands of the receiver for the benefit of the creditors of the insolvent bank.

[3] There is no contention here on the part of the defendant that, because the notes were not due at the date of insolvency or of making proof thereon, they were unmatured debts. That unmatured debts are provable both in bankruptcy and receivership needs no citation of authority.

[4] In this particular matter the instruction to the receiver from the Comptroller's office contained the following:

"It is recognized that ordinarily the holder of a negotiable note past due may proceed directly against the maker or any one of the indorsers, but in the case of a failed national bank no lien can be obtained against the assets of the bank by judgment or execution, and all collections made must be remitted to the Treasurer of the United States for deposit to the order of the Comptroller of the Currency, and by him distributed ratably in dividends to the creditors who have proved their claims or established them by order of a court of competent jurisdiction. Contingent claims are not recognized for proof until they become direct."

But in the view I have herein expressed the plaintiff's causes of action are not "contingent claims," and the proper practice in proving

these claims against this insolvent national bank is to first deduct credits in favor of the insolvent. The fact that the claims of the plaintiff mature after the receiver's appointment does not affect the right of set-off, and in my judgment the set-off should be made as hereinafter indicated. I am not unmindful of the opinion in Ex parte Howard National Bank, Fed. Cas. No. 6,764, in substance, that the indorsers' liability is no basis for claim until the maker is insolvent. Admitting that that was true under the law as it then stood, it does not follow that it is or can be true under the provisions of the recent statute and the rules and regulations made pursuant thereto.

[5] As to the causes of action upon the draft by the plaintiff, I gather from the record that just prior to the appointment of a receiver for the defendant the plaintiff received divers checks from its members, some of them drawn on the defendant and others drawn on other banks in the town of Eureka, S. D., in which defendant did business, amounting in the aggregate to $8,277.30. Those checks were received by plaintiff Reserve Bank from its member banks, as a clearing house under the provisions of the said Federal Reserve Act and the regulations thereunder. Immediately upon receiving these checks the plaintiff gave credit to the banks from whom they were received. The checks were at once forwarded to defendant—those upon defendant for payment and remittance, and those on the other banks for collection and remittance. The defendant bank thereupon collected the checks upon the other banks, received the money, and the assets of the defendant bank were enhanced thereby, and as to the checks drawn upon the defendant it became simply a matter of bookkeeping, and they were charged to the accounts of the respective parties and a draft for the amount above stated forwarded to the plaintiff covering the total of said checks. As I understand defendant's contention, it is that plaintiff is not entitled to have defendant's deposit account and its credit for canceled stock applied upon this draft, the same as on the rediscounts and the $100 check. The law, rules, and regulations cited by both counsel for plaintiff and defendant recognize the purpose and intent that the plaintiff should perform this service. The intent and purpose to protect the plaintiff is evident. Plaintiff very properly invokes the provisions of the law and the rules and regulations applying to clearing house functions. What is the situation with reference to the plaintiff and this large number of checks received from its member banks and forwarded in due course of the performance of its duties for clearance? These checks that were forwarded to the defendant bank which were drawn upon other banks, which constituted the major portion of this entire sum, were delivered to the banks upon which they were drawn, and by those banks charged to the accounts of the persons against whose accounts they were drawn, and have been canceled and delivered to the persons drawing them, the money paid by those banks to the defendant, and, I repeat, thus augmenting the assets of the defendant, the checks of the defendant bank being paid and canceled.

Having in mind this situation, I am not unmindful of the conten-

tion of counsel for defendant that the plaintiff had the right under the rules to charge the checks back to its members. This is true, but it cannot reasonably be said, in the light of the service to be rendered, which necessarily resulted in the checks going out of the possession of the Reserve Bank, going to the bank thereafter insolvent, and by it presented to the banks upon which they were drawn, surrendered, and canceled, that this right to charge the checks back is the only right of the Reserve Bank. It is self-evident that the right to charge a check back to its member bank is dependent upon its power to return the check to the member bank so that the member bank may in turn charge it back to the prior indorser, and that indorser back to the other, and so on until it reaches the maker. The clearing house rules respecting charging back these checks must be construed in harmony with the law merchant, so that, if the check is not paid, taken up, and returned to the member bank, at the time of its return it may be charged back; otherwise it cannot. Any other interpretation would put the loss upon the member bank that forwarded it to the Reserve Bank for clearing, or upon the Federal Reserve Bank, which has no interest in the check except in the performance of its duties as a clearing house. And, clearly, the same should be a claim in behalf of the Reserve Bank holding funds of the defaulting bank. I think this interpretation is justified in the consideration of that portion of section 16 of the act in question, "and may also require such bank to exercise the function of a clearing house for its member banks."

It must be presumed that Congress never intended that these Federal Reserve Banks should be required to become clearing houses for their members scattered throughout the different states of the Union, with the thought that the clearing house should operate as it does in a given city, where messengers are sent and at fixed hours, checks are exchanged, and balances paid. They must have understood that these checks upon banks at great distances, to be cleared by the Reserve Banks, would be days in the transmission and the receipt of information with reference to them. Having this in mind, the Federal Reserve Board provided by rule that—

"Member and clearing member banks will be required by the Federal Reserve Board to provide funds to cover at par all checks received from or for the account of Federal Reserve Banks."

From the time of the promulgation of this rule the credit of a member bank with its Federal Reserve Bank was rightfully treated by the Reserve Bank as a fund to cover all checks received from or for its account by a member bank. Indeed, if this Reserve Bank, as a clearing house, was to be made practical, if it were to be made possible for the banks to deal with it with any safety, the deposit account of this defendant bank must necessarily be treated as a fund to make good the balances in the clearing against defendant. Any other interpretation would impose the duty of clearing these checks with no provision for the safety of the banks using it, and no banker would be justified in assuming such a risk. That reasonable care imposed

upon the banker in handling checks and funds of its depositors demands an interpretation that will remove all question as to the safety of the transaction. The situation of the plaintiff and the defendant here would have been subject to the foregoing interpretation, even if the defendant bank had not, prior to its going into the hands of a receiver, forwarded its drafts upon the Minneapolis bank to the plaintiff to cover the entire amount of ·these collections. And if, upon receipt of these checks, the defendant had simply collected the checks and appropriated the proceeds without making remittance to the plaintiff, the liability of defendant would have been the same. The defendant having forwarded this draft to plaintiff, the same having been presented to the Minneapolis bank by plaintiff and dishonored, it at once became a primary obligation of the defendant and indebtedness of the defendant to the plaintiff, which constitutes a just and valid claim against the receiver.

The foregoing disposes of the last cause of action with reference to the $100 cashier's check.

I find in the record a stipulation by counsel for both plaintiff and defendant, in substance, that the seventh cause of action stated in the complaint has since argument and submission of the case been paid and is eliminated from the controversy, and therefore is not to be further considered in this action.

I am of the opinion that the judgment in this case should determine the amount of defendant's liability to plaintiff on August 13, 1920, on each of the separate causes of action, to the end that dividends on a rediscount may stop after it shall have been paid. To do this, it will be necessary, first, to credit on the 21 causes of action the $25,618.66 which it is conceded is to defendant's credit on its deposit account and for its canceled stock. There is no question but that plaintiff had and has the right to apply the credit as it chooses, but, construing the provisions of the collateral agreement in evidence, there having been no application in behalf of the defendant, it is my opinion that the same should be applied to the 21 causes of action (excluding the seventh cause of action) pro rata. · Findings and judgment should be prepared and forwarded accordingly.

Under this determination the receiver and the Comptroller of the Currency should allow the plaintiff dividends on its claim as it stood at the date of the failure of the bank. Since execution cannot issue against the assets of the bank in the custody of the receiver, the judgment drawn in favor of the plaintiff should contain an order to the receiver that he certify the amount found owing on the claims as of the date of insolvency to the Comptroller, to be paid in due course of administration. This modification of the judgment should be in terms, and it is intended that the plaintiff shall be paid on a parity with other allowed creditors.

In drawing findings and judgment, allow defendant proper exceptions.