## BANK OF ANCHORAGE v. CONROY.

### In re MATANUSKA COAL CO.

(Circuit Court of Appeals, Ninth Circuit. December 4, 1922.)

No. 3792.

Bankruptcy ☞164—Transfer of funds to one not creditor held not recoverable as preference.

One Baxter opened an account with defendant bank, as trustee for himself and associates in a coal-mining business in Alaska. He also made a contract to furnish coal to a government commission in the name of the Matanuska Coal Company and received in payment for coal a treasury check payable to that company, which he indorsed as general manager and deposited to his account as trustee. From the deposit an indebtedness from him as trustee to defendant was paid. Defendant had no knowledge of the company. *Held*, in an action by the trustee in bankruptcy of the company, that defendant was not a creditor of bankrupt, and having had no business relations with it, and having received the check in good faith its proceeds were not recoverable as a preferential payment.

In Error to the District Court of the United States for the Third Division of the Territory of Alaska; Fred M. Brown, Judge.

Action at law by M. J. Conroy, trustee in bankruptcy of the Matanuska Coal Company, against the Bank of Anchorage. Judgment for plaintiff, and defendant brings error. Reversed.

L. V. Ray, of Seward, Alaska, and E. E. Ritchie, of Valdez, Alaska, for plaintiff in error.

W. H. Rager, of Anchorage, Alaska, Sherman Duggan, of Anchorage, Alaska, John B. Miller, of Valdez, Alaska, and J. L. Waller, of Anchorage, Alaska, for defendant in error.

Before MORROW and HUNT, Circuit Judges, and BEAN, District Judge.

MORROW, Circuit Judge. M. J. Conroy, as trustee of Matanuska Coal Company, a corporation, bankrupt, defendant in error, was plaintiff in the court below; the defendant being the Bank of Anchorage, a corporation, plaintiff in error. A petition in involuntary bankruptcy was filed against the Matanuska Coal Company, alleged to be an Alaska corporation, on August 29, 1918, and on December 30, 1918, the coal company was adjudged a bankrupt. On January 25, 1919, plaintiff was appointed the trustee in bankruptcy of the bankrupt, and on January 27, 1919, he qualified as such trustee. He thereafter brought this suit against the bank to recover the sum of $17,352.64, which it was alleged was paid to the bank on July 19, 1918, by the Matanuska Coal Company, a corporation organized and existing under and by virtue of the laws of the territory of Alaska, and that the payment constituted a preference in violation of section 60 of the Bankruptcy Act (Comp. St. § 9644). The defendant, in its answer, denied, among other things, that the Matanuska Coal Company was a corporation; denied that it had paid to the defendant the sum of $17,352.64, or any

sum whatever, or at all; and denied that said sum was a part of the estate of the bankrupt.

It appears from the evidence that one Henry Baxter, together with three associates, Wilson A. Smith, C. C. Harcey, and Oliver LaDuke, made application to the Secretary of the Interior in 1917 for a lease of certain coal leasing units in the Matanuska coal fields, Alaska, and obtained authority to mine coal on such land in letter of the Secretary, pending the issuance of a lease by the federal government to such applicants. Subsequently Baxter entered into an agreement with Assistant Secretary Meyers of the Interior, under which coal was mined and delivered to the Alaska Engineering Commission, then engaged in the construction of a government railroad near Anchorage, Alaska. In May, 1917, Baxter opened an account with the Bank of Anchorage, at Anchorage, Alaska, in the name of "H. Baxter, Trustee," and in drawing checks signed them H. Baxter, Trustee. Baxter and his associates spent about $62,000 developing and working the coal mine, and the project was called the "Baxter Mine," the "Matanuska Coal Company," the "Baxter Coal Company."

On January 4, 1918, Baxter made application to the bank for a loan of $5,000 in behalf of himself and his associates, LaDuke, Harcey, Smith, and Baxter, as "H. Baxter, Trustee." On January 10th the bank made the loan, and took a promissory note, signed "H. Baxter, Trustee," and indorsed by him individually. In March, 1918, Baxter, in the name of the Matanuska Coal Company, signing himself as "General Manager," submitted a proposal to furnish the Alaska Engineering Commission with approximately 3,228 tons of coal. Baxter testified at the trial in this case that in making such proposal he was acting for the Matanuska Coal Company, an *Oregon* corporation. This evidence is uncontradicted, but there is no evidence in the record that the permission or lease granted by the Secretary of the Interior to mine for coal on such land had been assigned, sublet, or transferred to the Matanuska Coal Company of Oregon, or the Matanuska Coal Company of Alaska, or to any other corporation or person.

The Act of Congress of October 20, 1914 (38 Stat. 741, 744 [Comp. St. §§ 5078a–5078r]), provides for the leasing of coal lands in the territory of Alaska, and among other things provides, in section 12 (Comp. St. § 5078m), "that no lease issued under the authority of this Act shall be assigned or sublet except with the consent of the Secretary of the Interior." In the absence of evidence that Baxter and his associates assigned this permission or lease, the presumption is that no such assignment, subletting, or transfer was made.

In May, 1918, Baxter needed more money, and offered to have the United States pay the bank for coal delivered to the Engineering Commission, whereupon the bank permitted Baxter to draw against his account to the amount due Baxter and his associates from the Engineering Commission, to be paid when Congress should provide the Engineering Commission with funds for the railroad project. In July, 1918, Baxter received from the Engineering Commission, in payment for the coal delivered it, a treasury check for $17,352.64, made payable to "Matanuska Coal Company." Baxter indorsed this check "Henry

Baxter, General Manager," and deposited it in the bank to his account as trustee, receiving credit in that account, and the bank took up the overdraft and the $5,000 which was then past due.

In August, 1918, Baxter made application for another loan, in furtherance of his project, and the bank refused to grant it, upon learning from Baxter of the attempt to incorporate under the name of the Matanuska Coal Company. The bank officials also learned that the Secretary of the Interior had never actually issued a lease, and had not assented to the assignment of such lease as by law required, to such proposed corporation. It does not appear from the evidence that the Matanuska Coal Company, either as an Oregon or Alaska corporation, ever had an account with or made a deposit in the bank, and that the relation of debtor and creditor had ever been established. The bank, therefore, took no part in the bankruptcy proceedings. Manifestly it was a stranger to such proceedings.

Section 60 of the Bankruptcy Act (Comp. St. § 9644) treats of the property of the insolvent debtor and the claims of *his* creditors against that property. It avoids a transfer made by such insolvent debtor within four months of the filing of the petition in bankruptcy, the effect of which "will be to enable any one of *his creditors* to obtain a greater percentage of his debt than any other of *such creditors* of the same class." Plaintiff alleges in his complaint that, while the said Matanuska Coal Company was so indebted and insolvent, "said bankrupt paid to the defendant Bank of Anchorage the sum of $17,352.64, said payment of $17,352.64 to said defendant Bank of Anchorage being payment in full to said Bank of Anchorage of the indebtedness due it from said bankrupt."

As before stated, there is no evidence in the record that the bank ever was a creditor of the Matanuska Coal Company, either as an Alaska or Oregon corporation, or that the Matanuska Coal Company ever deposited any money with the bank, or was at any time indebted to the defendant bank in any sum of money whatever, or that it paid any sum of money to the defendant bank as and for an indebtedness to the bank or otherwise. There is no evidence that it ever borrowed any money from the bank, or that there was any financial transaction between the bank and the Matanuska Coal Company. A check was issued by the disbursing agent of the government to the Matanuska Coal Company for $17,352.64, in payment of coal delivered by Baxter and his associates to the Engineering Commission, and such check was delivered to Henry Baxter, by him indorsed "Genl. Mgr.," and deposited in defendant bank to his credit, as shown by the bank's deposit check. But this did not make the Matanuska Coal Company a debtor of the bank, and the deposit of this check in the bank by Henry Baxter, in the usual course of business, to an account of more than a year's standing, did not make the bank a creditor of Mantanuska Coal Company.

In depositing this check with the bank, Baxter was acting as the trustee for himself and his associates, Wilson A. Smith, C. C. Harcey, and Oliver LaDuke, and the check was received by the bank and credited to the account of "Baxter, Trustee," without any knowledge or reason to believe that the Matanuska Coal Company, the payee and in-

dorser, was insolvent. It appears further from the evidence that Baxter and his associates were solvent at the time of the deposit, and also at the time of the trial. It appears further that the money withdrawn from the bank on the checks of "Baxter, Trustee," was expended in the regular course of business, paying the expenses incurred in developing and operating the coal leases, from which the coal was taken and sold to the Engineering Commission, and for which the check for $17,352.64 was issued by the Commission. The evidence also establishes that the bank officials had no reason to believe in the insolvency of the project carried on in the name of "Baxter, Trustee"; that the officers acted in good faith in permitting Baxter to draw against the amount of money due from the United States for coal delivered to the Commission.

At the close of all the testimony, counsel for the defendant bank moved the court for a directed verdict in its favor, on the grounds hereinbefore stated. We think it was error in the court to refuse to give such instructions to the jury.

The judgment of the lower court is accordingly reversed, and, as there was no substantial conflict in the testimony, the direction is to dismiss the action.