## DOGGETT v. CHELSEA TRUST CO.
### No. 2908.

Circuit Court of Appeals, First Circuit.
Nov. 10, 1934.

Harry Shapiro, of Boston, Mass. (Alexander G. Gould, of Boston, Mass., on the brief), for appellant.

Lafayette R. Chamberlin, of Boston, Mass. (Chamberlin, Stone & Bosson, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from an order of the District Court of Massachusetts affirming the orders of a referee in bankruptcy.

From the pleadings set forth in the record, it appears that the H. T. West Company, which hereinafter will be referred to as the West Co., filed a voluntary petition in bankruptcy on August 23, 1932, and on the same day it was adjudicated a bankrupt, and the case was referred to a referee in bankruptcy. On September 20, 1932, the appellant was appointed trustee of the estate of the bankrupt.

On September 14 the appellee, which hereinafter will be referred to as the Trust Company, filed a petition with the referee setting forth that in the regular course of business it had loaned the bankrupt money and taken notes as evidence of said loan with an assignment of accounts receivable as collateral security; that the trustee since his appointment had collected said accounts re-

ceivable and had refused to turn over the sums so collected to the Trust Company, and prayed that the trustee be ordered to turn over the proceeds thereof to the Trust Company.

To this petition the trustee answered, admitting that he had collected certain of the accounts receivable, but with the approval of the court and consent of the Trust Company, and that he was holding the proceeds subject to the order of the court; but set forth that within four months of the filing of the petition in bankruptcy the bankrupt had transferred property to the Trust Company under conditions which resulted in giving the Trust Company a preference over other creditors and prayed that such transfer be declared to be a voidable preference.

The trustee also filed a petition with the referee alleging that the Trust Company had in its possession approximately $1,700 represented by certificates of deposit, which had been improperly withheld by the Trust Company; that since the filing of the petition in bankruptcy it had collected the sum of $115.91 on a certain trade acceptance, the proceeds of which it had improperly withheld from the trustee; and that the Trust Company had also improperly withheld deposits made by the bankrupt prior to the filing of its petition in bankruptcy in the amount of approximately $3,361.

The referee heard these petitions by agreement of the parties, who waived all questions as to pleadings and jurisdiction, and, in general, found that the Trust Company was entitled to apply in payment of a $5,000 note, though not yet due, the deposits of $3,361.91, and the $1,704.78 alleged to be held on certificates of deposit, and that it was entitled to have the trustee turn over to it the sum of $4,920.67, which it was agreed that the trustee had collected on the assigned accounts receivable, less the sum of $115.91 collected by the Trust Company on the trade acceptance, and that the Trust Company was entitled to collect the remainder of the accounts receivable assigned to it prior to bankruptcy and after liquidation of all the indebtedness of the bankrupt, pay any balance to the trustee.

On the petition of the trustee for a review of the referee's order, the referee certified to the District Court his findings of fact, which, in substance, are as follows:

The Trust Company had been lending money to the West Co. for about twelve years. On April 7, 1932, two unsecured notes of $5,000 each fell due. Following a practice of long standing, the West Co. substituted two new notes, unsecured, for $5,000 each, and payable on July 7, 1932. Shortly after this, and before April 28, 1932, the West Co. asked for a new loan. By this time the bank had come under new management. A new president insisted upon an examination of the affairs of the West Co., and it was found that the West Co. was borrowing from a New York finance company on accounts receivable. The Trust Company refused to go on if the West Co. continued to pledge its accounts receivable to outside finance companies. The new president demanded that the West Co. must do all of its business with the Trust Company, or none. Accordingly, it was arranged for the Trust Company to advance about $4,500 with which the West Co. paid off the New York finance company and got back the receivables previously pledged to that company. The Trust Company then insisted that the West Co. take up one of the $5,000 unsecured notes which was not due until July 7, 1932, and substitute therefor a collateral note for $5,000, secured by a second mortgage on some property in Winchester. This new note was dated April 28, 1932, and made payable July 28, 1932.

After this new arrangement the Trust Company made loans to the West Co. from time to time on accounts receivable to the extent of 65 per cent. of their face value, taking in each instance an assignment of such receivables to secure the advances made. The Trust Company, however, allowed the West Co. to collect the assigned receivables and to keep 35 per cent. of the amount so collected; the remaining 65 per cent. being paid to the Trust Company in reduction of its loans.

On July 7, 1932, when the second $5,000 unsecured note fell due, the Trust Company demanded and received a note in collateral form, which became due October 7, 1932, and which provided that any moneys or other property of the maker in the possession of the Trust Company might at all times at the option of the Trust Company be held and treated as collateral for its payment. When the note of $5,000 secured by the Winchester mortgage came due on July 28, 1932, it was also renewed for three months in collateral form. Thereafter business between the Trust Company and the West Co. continued as usual, and the Trust Company continued to advance substantial sums on receivables assigned as security.

On August 13, 1932, the treasurer of the West Co. informed the Trust Company that the West Co. had to have about $5,000 more

to pay a creditor who was pressing for payment. At this time the West Co., in addition to the $10,000 evidenced by the two collateral notes, owed the Trust Company $7,842 for new money advanced on assigned accounts receivable as security. The Trust Company refused to make further loans to the West Co. and proceeded to liquidate its loans.

On August 15 following, the Trust Company applied the entire amount which the West Co. had on deposit subject to check, viz., $3,361.91, in liquidation of the $5,000 collateral note due October 7, 1932.

The Trust Company also proceeded to collect the receivables assigned to it. There was evidently an understanding between the parties that the 35 per cent. which had previously been retained by the West Co. should now be held by the Trust Company in a separate fund, against which the Trust Company would issue certificates of deposit. No certificates of deposit, however, were ever issued to the West Co. The 35 per cent. of the receivables collected by the Trust Company before a receiver was appointed for the West Co. amounted to $1,704.78. The Trust Company at some time after the adjudication of bankruptcy, and before the appointment of the trustee, applied this sum to the liquidation of the collateral note due October 7, 1932, which sum, together with the amount of the checking account already applied by the Trust Company to this note, was sufficient to pay it in full.

Upon these facts the referee found there was no preference received by the Trust Company as a result of these transactions, and held that the terms of the collateral notes given on July 7 and July 28 were broad enough to permit the Trust Company to apply both the sum on deposit subject to check and all sums collected on the receivables in liquidation of the indebtedness of the bankrupt. The District Court by its order affirmed the order of the referee, though in its memorandum of decision it inadvertently stated that the referee's order permitted the Trust Company to retain also the sum of $115.91 collected on the trade acceptance after the filing of the petition in bankruptcy, although the referee expressly stated in his order that the trustee in bankruptcy was entitled to have turned over to him this sum. We think the District Court's order must be understood as being modified to this extent.

■ The notes of July 7 and July 28 did not increase the indebtedness of the bankrupt. They were given for a valid consideration, viz., the discharge of a prior note

for the same amount. No preference resulted in giving these notes. The application by the Trust Company of the deposits on hand on August 15 of $3,361.91 was warranted, we think, by the Trust Company's right of set-off under the Bankruptcy Act (11 USCA).

No reasonable objection could be raised by a trustee in bankruptcy to the Trust Company availing itself of this right of set-off under the circumstances of this case, since, as trustee in bankruptcy, he would have been obliged to allow it after adjudication. While the authorities do not appear to be entirely in accord as to the right of set-off in all cases against notes not due, there are authorities which sustain such right of set-off by a bank under sections 63 and 68 of the Bankruptcy Act (11 USCA §§ 103, 108), especially where the insolvency of the debtor is apparent and bankruptcy later follows. Rupp v. Commerce Guardian Trust & Savings Bank (C. C. A.) 32 F.(2d) 234; Germania Savings Bank & Trust Co. v. Loeb (C. C. A.) 188 F. 285; American Bank & Trust Co. v. Morris (C. C. A.) 16 F.(2d) 845; Putnam v. United States Trust Co., 223 Mass. 199, 202, 111 N. E. 969; Carr v. Hamilton, 129 U. S. 252, 256, 9 S. Ct. 295, 32 L. Ed. 669; Federal Reserve Bank of Minneapolis v. First National Bank of Eureka, S. D. (D. C.) 277 F. 300, 302, 303.

There is no ground for a contention that the deposits amounting to $3,361.91 were made except in the usual course of business and were subject to check. From July 7 to August 13 the bankrupt did business as usual, making deposits and issuing checks against the deposit, which were honored by the Trust Company. There are no facts certified to by the referee that require the inference that it received them for the purpose of building up a deposit to set off against the depositor's notes, or that the depositor had any intent to thereby give the Trust Company a preference over other creditors. Plymouth County Trust Co. v. MacDonald (C. C. A.) 60 F.(2d) 94, 95; Fourth National Bank of Wichita, Kan., y. Smith (C. C. A.) 240 F. 19.

■ As to the application of the $1,700 item, a different situation arises. The right to offset this sum against the indebtedness of the bankrupt must depend on the terms of the collateral notes and of the assignment of the accounts receivable, or an equitable right of set-off. Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Putnam v. United States Trust Co., supra; Schuler v. Israel, 120 U. S. 506, 510, 7 S. Ct. 648, 30 L. Ed.

707; 24 R. C. L. 843; Nashville Trust Co. v. Nashville Fourth National Bank, 91 Tenn. 336, 18 S. W. 822, 15 L. R. A. 710.

The collateral notes were general in form and were drafted to apply also to other situations than those present here, and contained the following provisions, which are applicable to the facts in this case:

"It is further agreed that any moneys or other property at any time in the possession of the Trust Company belonging to any of the parties liable hereon to the Trust Company, as maker or endorser or guarantor, and any deposits, balance of deposits, or other sums at any time credited by or due from the Trust Company to any of said parties, may at all times at the option of the Trust Company, be held and treated as collateral security for the payment of this note or any other liability of the maker hereof to the Trust Company, *whether due or not due,* and the Trust Company may at any time at its option set off the amount due or to become due hereon against any claim of any of said parties against the Trust Company." (Italics supplied.)

The assignment of the accounts receivable was given for a valid consideration, viz., a loan of 65 per cent. of their face, and under its terms the Trust Company was entitled to collect the entire amount and apply it on the loans to secure which they were assigned as collateral, at least until fully paid. The assignor was entitled to any balance, unless the collateral notes given July 7 and July 28 gave to the Trust Company the right to retain any such balance and apply it on the notes of July 7 and July 28.

Until August 13, 1932, there was no apparent change in the business relations between the Trust Company and the bankrupt. The Trust Company, no doubt, from the fact that it was requiring collateral on all its loans, had become satisfied in April, 1932, that the bankrupt's credit was somewhat impaired, but it does not follow that it had become convinced that the West Co. was insolvent and would not eventually meet its obligations. Conservative banking alone required that it protect its future loans.

On August 13, however, it was faced with the proposition that the West Co. needed $5,000 to meet the demands of a creditor who was pressing for payment. It already owed the Trust Company nearly $18,000. We think the Trust Company was then warranted in concluding that the West Co. was insolvent, as it was later conclusively shown to

be by its voluntary petition in bankruptcy filed ten days thereafter.

■ What the actual status of the $1,700 item was at the time of the adjudication of bankruptcy, or when a receiver was appointed, is not clear from the record. The Trust Company on August 15 took over the collection of the accounts receivable, as it had a right to do under the assignments; there being nothing in the written assignment to the contrary, or permitting the West Co. to collect. While the referee found that some arrangement was made by which the Trust Company agreed to retain 35 per cent. in a special fund and issue certificates of deposit therefor, it was not required to do so by the terms of the assignment. No certificates of deposit against this fund were ever issued; but at some time, either upon the adjudication of bankruptcy, or the appointment of a receiver, the Trust Company applied this $1,700 item on the note of the bankrupt dated July 7, 1932. That it was not then due is no ground of objection to this procedure, since, if not a preference, they were a proper set-off under sections 63 and 68 of the act (11 USCA §§ 103, 108); an adjudication in bankruptcy having taken place. New York County National Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380; Studley v. Boylston National Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313; Fourth National Bank v. Smith, supra. This procedure by the Trust Company was also warranted by the terms of its collateral notes.

■ The assignment of the accounts receivable in good faith as security for a present loan cannot be held to be a preference, even if made within four months of bankruptcy. The giving of a new note for an old matured note within four months of a petition in bankruptcy is not a preference, nor does the fact that it contained a provision that any collateral held by the payee, or any funds which came into its hands should be applied in payment, constitute a preference unless the debtor was insolvent, and the creditor had reasonable grounds to believe it would effect a preference. Sections 60a and 60b of the act (11 USCA § 96 (a, b); Peck & Co. v. Whitmer (C. C. A.) 231 F. 893; Essley Machinery Co. v. Belsley (C. C. A.) 235 F. 285. That the collateral notes were not given to prefer the Trust Company over other creditors, or that they were procured by the Trust Company for that purpose, is evidenced by the fact that up to August 15 the Trust Company permitted the bankrupt to collect the

accounts receivable and retain 35 per cent. thereof, paying the balance only to the Trust Company. The burden of proving the facts constituting a voidable preference was on the trustee.

These facts the referee must have found in favor of the Trust Company. The evidence on which the referee based his findings of fact is not before this court, but we see nothing in the pleadings or the certificate of facts by the referee to require a contrary finding by the District Court, or this court.

If the accounts receivable were assigned for a valid consideration and no preference resulted from the giving of the collateral notes, then the Trust Company was entitled to collect the entire receivables and apply them to any indebtedness of the bankrupt. The order of the referee to that effect, therefore, was properly affirmed.

Except as to the item of the trade acceptance amounting to $115.91, the order of the District Court is affirmed, with costs, and the case is remanded to that court for further proceedings not inconsistent with this opinion.