### In re ULEN & CO.

District Court, S. D. New York.

Dec. 31, 1941.

Van Vorst, Siegel & Smith, of New York City (Edgar E. Harrison, of New York City, of counsel), for trustee.

Sullivan & Cromwell, of New York City (John F. Dooling, Jr., of New York City, of counsel), for Marine Midland Trust Co. of New York.

GODDARD, District Judge.

This is a petition to review an order of the Referee dismissing the objections of the Trustee of Ulen & Company (hereinafter referred to as the Debtor) to the claim of The Marine Midland Trust Company of New York (hereinafter referred to as the Bank).

The Trustee seeks only a review of the Referee's dismissal of the first objection which attacked a set-off made by the Bank of the Debtor's deposit balance against the Debtor's unmatured promissory note, during the pendency of a Chapter XI Arrangement Proceeding, 11 U.S.C.A. § 701 et seq. The set-off was made shortly prior to the institution by the Debtor of a Chapter X (11 U.S.C.A. § 501 et seq.) petition for the reorganization of the corporation, and the Trustee takes the position that the aforesaid set-off was a voidable preference and thus the Bank's claim should have been disallowed unless it surrenders the amount of the set-off, pursuant to Section 57, sub. g of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. g.

The material facts, as found by the Referee, are not disputed, are sustained, and are substantially as follows:

On August 16, 1939, the Debtor borrowed $95,000 from the Bank on its (Debtor's) promissory note, maturing on June 15, 1940, that amount being deposited by the Debtor in its regular checking account with the Bank which the Debtor had maintained at and for some time prior to the time of the making of the loan. In October, 1939, the Debtor became insolvent, within the meaning of Section 1 (19) of the Bankruptcy Act, 11 U.S.C.A. § 1 (19), to the knowledge of the Bank, and continued to be insolvent up to the time of the Referee's decision. The Debtor continued to draw on its account until December 4, 1939, when its balance amounted to $3,595.12, at which time the Debtor deposited $30,000 with the Bank, increasing its deposit balance to $33,593. This deposit was not made as security for the payment of the note indebtedness, nor was it received by the Bank with intent to apply it against the principal amount of the note, nor was the deposit account of the Debtor with the Bank built up for the express purpose of permitting the Bank to set it off, thereby acquiring a preference, but it was built up in the ordinary course of business.

Between December 4, 1939, and January 2, 1940, the Debtor made withdrawals from its account, aggregating $839.79, and on February 16, 1940, filed a Petition for Arrangement under the provisions of Chapter XI of the Bankruptcy Act, which proceeding was continuously pending from February 16, 1940, until June 14, 1940, on which day it was dismissed on the Debtor's motion by reason of the decision of the United States Supreme Court in the case of Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293. The Chapter XI proceedings were dismissed by the Debtor in contemplation of the institution by it of a Proceeding for Reorganization under Chapter X of the Act, said latter proceeding having been instituted upon the Debtor's petition, dated June 14, 1940.

The Plan of Arrangement, filed by the Debtor in the Chapter XI proceedings, did not in terms "affect" the Bank within the meaning of Section 308 of the Bankruptcy Act, in that said Plan did not classify the Bank with the general unsecured creditors whose claims were to be modified or altered, and did not contain any provisions for the modification or alteration of the claim of the Bank. Among the other unsecured creditors are holders of $3,897,000 principal amount of unsecured debentures, upon which there has been no payment of principal or interest since at least August 1, 1939. On April 23, 1940, the Debtor moved in the Chapter XI proceedings for a classification of the creditors, pursuant to Section 351 of the Bankruptcy Act, stating in its petition that opponents of the Plan

objected to the classification of creditors and to the failure of the Plan to provide that the note held by the Bank should be affected by the Arrangement, that motion remaining undetermined and pending on June 14, 1940, when the Chapter XI proceedings were dismissed. The Referee indicated on the record in the course of the Chapter XI hearing that he could not see why the unsecured debenture holders of the Debtor and the Bank were in any different classification, thereby foreshadowing a decision sustaining the objections to this different classification. On May 27, 1940, the same day on which the United States Supreme Court handed down its decision in Securities and Exchange Commission v. United States Realty & Improvement Co., supra, the Bank charged the Debtor's account with it, in the amount of $31,198.62, being the balance of the account, and applied same to the Debtor's indebtedness to it, reducing the principal thereof to $63,801.38, and on the same day the Bank sent notice of the set-off to the Debtor, because it appeared obvious to the Bank at that time that the Plan under the Chapter XI proceedings, which did not alter or modify the Bank's rights, would not be consented to or confirmed and it seemed very possible to the Bank that the Debtor would move into proceedings under Chapter X of the Bankruptcy Act. On the same day, the Debtor drew two cheques on the Bank which were dishonored on presentation, as was an additional cheque for $31,198.62 subsequently drawn.

The Referee concluded that from February 16, 1940, the beginning of the Chapter XI proceeding, the Bank had the right to assert a right of set-off, but whether the set-off would ultimately be allowed, would depend on all the facts and circumstances of the case as ultimately determined in that proceeding; the right of set-off was not defeated by the dismissal of the Chapter XI proceeding so as to be unavailable in the present Chapter X proceeding, since that right could have been properly asserted in this proceeding for the first time; and for all practical purposes, the Debtor has been continuously in one of the proceedings under the Bankruptcy Act, since February 16, 1940, but on May 27, 1940, it was not certain whether or not ultimately the facts and circumstances were or could become such as to make Section 68, 11 U.S.C.A. § 108, applicable to the Chapter XI proceeding by virtue of

Section 302 of the Bankruptcy Act. The Referee then dismissed the objections of the Trustee, based upon the contention that the Bank had no right of set-off and held that the Bank was a general unsecured creditor of the Debtor in the amount of $63,801.38. The Trustee contends that since the note had not matured and since the Bank was not affected by the Plan or Arrangement, it had no equity of set-off.

A bank may set off the balance in a regular checking account of a depositor against an unmatured promissory note, after a petition in bankruptcy has been filed, in the absence of fraud, collusion, or a showing by the Trustee that the balance was not accumulated in the regular course of business, or that it was built up for the purpose of giving a preference to the bank. Bankruptcy Act, Sections 1(11), 63, sub. a(1), 68, sub. a, 11 U.S.C.A. 1(11), 103, sub. a(1), 108, sub. a; New York County Nat. Bank v. Massey, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380; Studley v. Boylston National Bank, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313; Scammon v. Kimball, 92 U.S. 362, 23 L.Ed. 483; In re Philip Semmer Glass Co., 2 Cir., 135 F. 77, appeal dismissed 203 U.S. 141, 27 S.Ct. 50, 51 L.Ed. 128; Doggett v. Chelsea Trust Company, 1 Cir., 73 F.2d 614; Fourth National Bank of Wichita v. Smith, 8 Cir., 240 F. 19; Rupp v. Commerce Guardian Trust & Savings Bank, 6 Cir., 32 F.2d 234; Frank v. Mercantile National Bank, 182 N.Y. 264, 74 N.E. 841, 108 Am.St.Rep. 805.

Section 68 of the Bankruptcy Act, 11 U.S.C.A. § 108, recognizes a right of set-off of mutual debts, matured or unmatured. It is only necessary that the debt be owing and the set-off is made after bankruptcy. Bankruptcy Act, Sections 1 (11), 63, sub. a(1), 68; 4 Remington on Bankruptcy, 4th Ed., § 1455, p. 222; Germania Savings Bank & Trust Company v. Loeb, 6 Cir., 188 F. 285, appeal dismissed 231 U.S. 761, 34 S.Ct. 326, 58 L.Ed. 470; In re Pottier & Stymus Co., 2 Cir., 262 F. 955. Nor does the knowledge of the bank that the debtor is insolvent prevent the set-off. In re Wright-Dana Hardware Company, 2 Cir., 212 F. 397.

This brings us to the final question of whether Section 68 applies to an Arrangement Proceeding under Chapter XI.

Section 302 of Chapter XI expressly makes the provisions of Chapter I to Chap-

440

ter VII applicable to Chapter XI proceedings "* * * insofar as they are not inconsistent with or in conflict with the provisions of this chapter * * *."

Section 302 of Chapter XI also makes clear that no provision of Chapters I to VII is inapplicable to Chapter XI proceedings merely because it refers to a "bankrupt" rather than to a "debtor". "Despite those basic differences in the objectives of an ordinary bankruptcy proceeding and of an arrangement proceeding, numerous provisions in Chapters I to VII are entirely consistent with the administration of a case under Chapter XI and have been made applicable to arrangement proceedings." 8 Collier on Bankruptcy, 14th Ed., pp. 5 and 7. Cf. Lockhart v. Garden City Bank & Trust Company, 2 Cir., 116 F.2d 658.

Section 352 of Chapter XI grants creditors the same rights, duties and liabilities with respect to the property of the debtor which they have in ordinary bankruptcy unless that is inconsistent with the provisions of Chapter XI.

█ Chapter XI is clearly a proceeding under the Bankruptcy Act, and I think that the filing of the petition in Chapter XI proceeding made no material difference in its effect on the Bank's position than the filing of a petition in ordinary bankruptcy, under Chapters I to VII.

"A Chapter XI proceeding is a bankruptcy proceeding. If it were not, in the broad sense that the statutory provisions authorizing it did not constitute laws on the subject of bankruptcies, then those statutory provisions would not come within the constitutional grant of power to establish uniform laws on the subject of bankruptcies and they would be unconstitutional. (Continental Illinois Nat. Bank & T. Co. v. Chicago, Rock Island & Pac. Ry. Co., 294 U.S. 648 [55 S.Ct. 595, 79 L.Ed. 1110] (decided under § 77 [11 U.S.C.A. § 205])". 8 Collier on Bankruptcy, 14th Ed., p. 8.

The applicability of Section 68 to railroad reorganization under Section 77 of the Bankruptcy Act was discussed by the United States Supreme Court in Lowden v. Northwestern National Bank & T. Co., 298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114, but the Court declined to pass upon the question, on the ground that the questions certified to it were insufficient and deficient in form. In passing, however, the Court stated that a petition under Section 77 is for reorganization and from the mere initiation of such petition, in itself, it can-

not be known whether it will be necessary to have recourse to Section 68. Mr. Justice Cardozo said (298 U.S. at pages 163, 164, 56 S.Ct. at page 698, 80 L.Ed. 1114):

"A proceeding to reorganize is not a bankruptcy, though an amendment to the bankruptcy act creates and regulates the remedy. From the fact without more that such a proceeding has been initiated, one cannot know that it will be necessary to have recourse to section 68 * * * which was meant in its enactment to prescribe the rule of set-off upon a distribution of the assets. That stage of administration, or the analogous stage of a revision of the debts, may never be attained in a proceeding to reorganize, though a petition has been approved and trustees have been appointed. If a plan of reorganization is not proposed or accepted, or, being proposed and accepted, is not confirmed by the court within a reasonable time, the whole proceeding may be dismissed (section 77(c) (7), 47 Stat. 1476); the title to the estate thus reverting to the debtor. * * *"

"The rule to be accepted for the purpose of such a suit is that enforced by courts of equity, which differs from the rule in bankruptcy chiefly in its greater flexibility, the rule in bankruptcy being framed in adaptation to standardized conditions, and that in equity varying with the needs of the occasion, though remaining constant, like the statute, in the absence of deflecting forces. * * *". 298 U.S. at pages 164, 165, 56 S.Ct. at page 698, 80 L.Ed. 1114.

Bearing this decision in mind, I hold that on February 16, 1940, a right to assert a right of set-off against the deposit of the Debtor, which it had on hand, accrued to the Bank and continued to exist and was in existence on May 27, 1940, when the Bank asserted this right. The fact that the Plan of Arrangement did not affect the Bank is not determinative. 8 Collier on Bankruptcy, 14th Ed., p. 82.

Whether or not the Bank would be entitled ultimately to retain the set-off depended, on May 27, 1940, upon all the facts and circumstances of the case at that time. It having been found that the Bank asserted its right of set-off after the inception of the bankruptcy proceeding, unless the Trustee could show that a preference was intended, or that fraud or collusion existed, Section 68 applied and gave the Bank a right to retain the set-off. Since none of these facts were shown to have existed, the

decision of the Referee is affirmed, and the *petition to review is dismissed.*

Settle order on notice.