H. E. HARPER, Trustee in Bankruptcy of the Estate of Hal Norwood Perkins

v.

FIRST NATIONAL BANK IN MANSFIELD.

Civ. A. No. 5578.

United States District Court
W. D. Louisiana,
Shreveport Division.

Oct. 3, 1957.

**322**

John Paul Woodley, May & Woodley, Shreveport, La., for plaintiff.

Charles C. Hunter, Colvin & Hunter, Mansfield, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

### Findings of Fact and Conclusions of Law

This cause having been submitted for decision, by the Court without a jury, the Court having considered the pleadings, the stipulations of counsel, the exhibits, the testimony of the witnesses, and the briefs of counsel, hereby makes and enters the following

### Findings of Fact

**1.**

This plenary action was filed by the Trustee of the bankrupt estate of Hal Norwood Perkins, under Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96, against the First National Bank in Mansfield, Louisiana. Originally, the suit sought recovery of allegedly preferential payments of approximately $1,900, said to have been made by Perkins to defendant within four months of his adjudication in bankruptcy. An amended and supplemental complaint enlarged the claim to $7,253.94.

**2.**

Perkins filed a voluntary petition in bankruptcy in this Court on January 17, 1956, adjudication having been ordered on the same date. He was a lumber broker. For many years prior to that date defendant had loaned him funds to finance his operations, in the following manner: Perkins borrowed money from the bank to cover purchases of lumber by him, and its sale to his customers. In each instance, before purchasing the lumber, he had negotiated its sale to a customer. As security for the loans made by the bank, he simultaneously assigned to it the bills of lading or invoices covering the lumber. He then paid for the lumber with the money he borrowed from the bank, and had it shipped to his customer. The bank immediately sent copies of the assigned invoices, or bills of lading, to the purchaser, and the latter remitted directly to the bank for the sale price. Upon payment by Perkins' customer of the amount due upon the bills of lading, or invoices, the bank paid itself the amount of the loan it had made to Perkins, with accrued interest, for which the assignment had been taken, and if any balance remained, it either was deposited to the account of Perkins in the bank, or on some occasions was credited upon other notes owed by Perkins, which had not been paid in full because the returns on some invoices were less than the amount he had borrowed. Occasion-

ally, if Perkins happened to be present when the returns were received at the bank, it deposited them to his account and he simultaneously gave the bank a check for the amount of his note. All loans made to Perkins by the bank, and all payments made to it, were handled in this manner.

### 3.

As stated, on a few occasions during this period of several years, returns on bills of lading to the bank, i. e., remittances by Perkins' customers upon the assigned bills of lading or invoices, did not equal the amount of the loan advanced by the bank for the purchase of lumber. Because of this, these particular loans remained unpaid to that extent, and were renewed from time to time. Portions of subsequent returns on bills of lading or invoices were credited to these particular loans. However, concurrently with the making of each loan by the bank, the bills of lading or invoices were assigned in full by Perkins to the bank, and it was authorized by the assignments to credit any returns from the invoices to the particular loan for which the money was advanced, or, if there was an excess, to other loans which had not been paid in full.

### 4.

On November 8, 1955, Mrs. Annie R. Perkins, wife of the bankrupt, borrowed $1,400 from defendant, after Perkins had attempted to negotiate a loan for that amount and had been turned down by the bank because he did not have any accounts receivable to assign as security. Perkins signed his wife's note as an accommodation maker, but the loan actually was made to Mrs. Perkins, not to him, and was based upon her own separate and paraphernal credit rating, she being the owner of a substantial interest in an estate left by her parents. This loan was repayable in monthly instalments of $70 each. It was set up on a separate liability ledger note sheet in her name, and was not posted to the note liability sheet of her husband. Consequently, this transaction constituted a loan to Mrs. Perkins, not to Mr. Perkins, as far as

the bank was concerned, and it was to her that the bank looked for repayment. However, on December 31, 1955, the loan was repaid by Mr. Perkins with a check given on the account of Anne Perkins, his daughter. The funds used for repayment of the loan were obtained by him through settlement of a law suit which he had brought against one of his debtors, but the bank did not learn of this until after his bankruptcy.

### 5.

The voluntary petition in bankruptcy filed by Perkins came as a complete surprise to the bank and its officers. They had no previous knowledge or intimation that he was contemplating bankruptcy or that he was insolvent. For a period of five to ten years, the bank had been making loans to him, financing his business in the manner described. It even continued to lend him money until a date just shortly before he filed his bankruptcy petition. Under these circumstances, we must find it to have been a fact that the bank had no knowledge of any insolvency on the part of Perkins, if he was insolvent, nor did it have reasonable cause to believe that he was or might become insolvent during the period in which the allegedly preferential payments were made. Particularly was this so during the four months period immediately prior to the date of his bankruptcy. The same Finding of Fact also is applicable to the repayment of the Annie R. Perkins loan of $1,400.

### 6.

Moreover, the record shows that, during all but the last few days of the four month period, Perkins was in fact solvent, according to his books, and his insolvency was brought about by his failure to collect in full a valid account due and owing to him. This occurred just prior to his adjudication in bankruptcy. If all genuine accounts receivable that were due him had been paid, he would have been solvent in fact when all of the allegedly preferential payments were made. From this it necessarily follows that plaintiff has failed to prove Perkins

was actually insolvent, as alleged, until a few days prior to January 17, 1956.

### Conclusions of Law

#### 1.

The Court has jurisdiction of the parties and the subject matter. 28 U.S.C.A. § 1334; 11 U.S.C.A. § 96, sub. b.

#### 2.

■■ The assignments of invoices, or bills of lading (being the equivalent of assignments of accounts receivable), made by Perkins to the bank, in all instances were made contemporaneously with loans by the bank to him, and were made for a fair and adequate present consideration, in good faith, and without fraudulent intent, actual or implied, on the part of either Perkins or the bank. These assignments were completed, in each instance, immediately after the bank made the loans to Perkins, by the giving of due notice to his customers. Consequently, these transactions, the subsequent payments of the accounts, by Perkins' customers to the bank, and the bank's crediting of the payments against Perkins' indebtedness to it, did not constitute payments by Perkins upon antecedent debts; and there was no diminution of Perkins' estate, within the meaning of Section 60 of the Bankruptcy Act. Therefore, the transactions were not voidable preferences, in whole or in part. Adams v. City Bank & Trust Company of Macon, 5 Cir., 115 F.2d 453, 134 A. L.R. 1215; Wolf, Trustee v. Aero Factors Corp., 2 Cir., 221 F.2d 291; Doggett v. Chelsea Trust Company, 1 Cir., 73 F. 2d 614; 3 Collier on Bankruptcy (14th Edition) 824 et seq., §§ 60.19, 60.20. Payments to the bank by Perkins' customers, pursuant to the assignments, and set-off of these amounts by the bank against Perkins' indebtedness to it, did not constitute a preference, or a "transfer" of any of his "assets", under Section 60. Grubb v. General Contract Purchase Corp., 2 Cir., 94 F.2d 70; Inter-State National Bank of Kansas City v. Luther, 10 Cir., 221 F.2d 382, 393; Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275; National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042; Studley v. Boylston National Bank, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313; Jandrew v. Guaranty State Bank, 5 Cir., 294 F. 530.

#### 3.

Moreover, since there was no proof that Perkins was insolvent until immediately before he filed his petition in bankruptcy, and the bank had no reasonable cause to believe that he was, or might become, insolvent, until the actual filing of his petition, the "Fourth Element of Preference", under Section 60 of the Act, is lacking, this being an additional reason why plaintiff may not recover from defendant here. In re Tiger, D.C., 109 F.Supp. 737, affirmed 3 Cir., 201 F.2d 670; Stucky v. Masonic Savings Bank, 108 U.S. 74, 2 S.Ct. 219, 27 L.Ed. 640; Studley v. Boylston National Bank, supra; 3 Collier on Bankruptcy (14th Edition) 857, § 60.30, and authorities there cited; 6 Am.Juris. 1183, Bankruptcy, § 1059. Cf. General Electric Credit Corporation v. Davis, 4 Cir., 224 F.2d 322; Inter-State National Bank of Kansas City v. Luther, supra.

#### 4.

■ Our Conclusion of Law No. 3, supra, and the authorities there cited, are equally applicable to the payment by Perkins to the bank, on December 31, 1955, of the $1,400 loaned to Mrs. Perkins, inasmuch as this was 1) not a payment upon his own antecedent debt, insofar as the bank was concerned, but upon his wife's separate and paraphernal indebtedness, and 2) the bank neither knew, nor did it then have reasonable cause to believe, that he was insolvent. 3 Collier on Bankruptcy (14th Edition) 997, § 60.53. If the Trustee has any enforceable claim because of this transaction, it is against Mrs. Perkins, whose debt was paid, and not against the bank.

Bank of Anchorage v. Conroy, 9 Cir., 284 F. 929.

### 5.

Plaintiff is not entitled to recover from defendant.

Proper decree should be presented for signature.