**In re HOSPITAL NUESTRA SEÑORA de GUADALUPE, INC., Debtor.**

**UNITED STATES of America, Appellant,**

v.

**EMERALD OF PUERTO RICO, INC., Appellee.**

Bankruptcy No. B–79–202(B).

Civ. No. 81–0358(PG).

United States District Court, D. Puerto Rico.

June 16, 1982.

Everett De Jesús, Asst. U. S. Atty., Hato Rey, P. R., Cynthia C. Cummings, Civ. Div., Dept. of Justice, Washington, D. C., for plaintiff.

Rafael A. Rivera Cruz, Hato Rey, P. R., for Gloria Campos Ayala.

Rodrigo Otero Bigles, Hato Rey, P. R., for defendant.

OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This is an appeal filed by the United States of America from the Order entered

on January 20, 1981, wherein the Bankruptcy Court denied United States' objection to the payment by Hospital Nuestra Señora de Guadalupe, Inc., to Emerald of Puerto Rico, Inc. (hereinafter referred to as Emerald).

On June 18, 1979, the debtor filed bankruptcy under Chapter XI. Prior to June 18, 1979, debtor had entered into a factoring agreement with Emerald whereby the majority of debtor's account receivables were assigned. Debtor initially claimed that its critical financial condition had forced it to enter into this factoring agreement which it described as onerous and as to which debtor expressed doubts that Emerald's security instruments had been duly perfected. Subsequently, as a result of various conferences between debtor and Emerald, a stipulation for payment of secured claim was presented to the Bankruptcy Court. Therein, debtor recognized the validity of Emerald's lien; that the debtor owed Emerald approximately $1,100,000.00; and further provided to liquidate the Emerald balance in monthly payments of $68,000.00 while Emerald's secured status would be maintained by assigning it certain accounts receivables generated by future operations. In exchange, debtor would receive certain monies from Emerald and would be able to collect all accounts receivable already assigned to Emerald, which funds would give debtor the necessary cash flow to continue to operate the hospital. The stipulation was approved by the Bankruptcy Court on September 13, 1979, and approved again after notice was given to the creditors, and a hearing was subsequently held on November 30, 1979. The Bankruptcy Judge determined that other unsecured and secured creditors had not been adversely affected by the payments to Emerald because it was a secured creditor and the payments had not prejudiced anyone in the case. The Bankruptcy Judge further held that there being before the Court no factual or legal basis on which the secured interest of Emerald could be voided and the debtor and operating receiver having accepted the validity of Emerald's secured status, the objection of February 21, 1980, of the United States of America, was thereby denied.

The United States contends the following: that the Bankruptcy Judge erred in failing to determine whether Emerald's security interest was valid; that the Bankruptcy Court did not determine the extent to which Emerald was secured; that the stipulation did not benefit the debtor's estate or the other creditors; and that Emerald received an unjustifiable benefit under the terms of the stipulation.

Although the Bankruptcy Order now being appealed is devoid of legal conclusions, we must nevertheless affirm said Order.

■ An assignment of account receivables in good faith as security for a present loan cannot be held to be a preference as to other creditors even if made within four months of bankruptcy. 3 Collier on Bankruptcy (14th Ed.) 60.19, at 849; *Dogget v. Chelsea Trust Co.*, 73 F.2d 614 (1 Cir., 1934). In the same category also are advancements upon security for current business operations or expenses. Collier on Bankruptcy, *supra*, at 853.

As to the difference between preferences of antecedent debts and securities given at a time of incurring liabilities, 60.19 Collier on Bankruptcy, page 855, n. 15, quotes Justice Davis from the case of *Tiffany v. Boatmen's Institution*, 18 Wall. 375, 21 L.Ed. 868, as stating:

Neither the terms or policy of the bankruptcy act are violated if these collaterals be taken at the time the debt is incurred. His (the bankrupt's) estate is not impaired or diminished in consequence, as he gets a present equivalent for the securities he pledges [assigns] for the repayment of the money borrowed. Nor in doing this does he prefer one creditor over another, which is one of the great objects of the bankruptcy law to prevent. The preferences at which this law is directed can only arise in case of antecedent debts.... (I)f the transaction be free from fraud in fact, the party who loans the money can retain them [securities] until the debt is paid.... In the administration of the bankrupt law in England this subject has frequently come

before the courts, who have uniformly held that advances may be made in good faith to a debtor to carry on his business, no matter what his condition may be, and that the party making these advances can lawfully take securities at the time for their repayment...."

■ The estate of Hospital Nuestra Señora de Guadalupe was not depleted by the assignment of account receivables to Emerald. The money received by the Hospital from Emerald, without which the Hospital could not have continued in business at all, was the full equivalent of the assigned account. It was the Hospital's purpose to continue in business if it could, while on the other hand, Emerald's purpose was to collect its debt insofar as it could.

Where the assignment is in form sufficient to pass title, the assignee is clothed with ample authority to make collections of the accounts, at least after notice to the debtors, and if the assignee does in fact make the collections, it is not questioned that he is entitled to retain them in accordance with the provisions of the assignment and the contract between the assignor and assignee, nor will the arrangement be invalid merely because the assignee constitutes the assignor his agent to make the collection for him. But the assignee must not intentionally or customarily permit the assignor in that case to collect and use the accounts without turning them over to the assignee to be credited on the indebtedness. *In Re Helfenbein*, 32 F.Supp. 26, 27 (D.C. Ma., 1940). As stated in *In Re Helfenbein, Id.*, at 28:

"The practice of financing by assigned accounts is now very widespread. It is of advantage to a merchant or manufacturer with insufficient capital, and naturally is also frequently practiced by persons or corporations in precarious or failing financial condition. In the latter case, in the event of bankruptcy, unsecured creditors often find that the principal assets of the bankrupt which otherwise would be readily reducible to cash have been pledged and withdrawn from the general assets of the bankrupt.... The doctrine of *Benedict v. Ratner, supra,* [268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991 (1925) ] is of some assistance to the unsecured creditors in that at least requires the assignee to exercise care to see that collections are applied on account of the debt; but in practice the finance companies protect themselves, under the majority of existing decision, by some careful arrangement under which from time to time collections made are deposited to their account and new loans made to the assignor secured by new assigned accounts or by substitution of new assigned accounts for old ones, thus in effect creating a revolving fund or floating charge."

■ A secured creditor of a bankrupt has three possibilities: (1) to prove his claim as an unsecured claim and surrender his security; or (2) to prove his claim as a secured claim and give the bankrupt credit for the value of the security; or (3) not to prove at all and rely solely on the security. The failure to file a proof of claim does not affect the creditor's right to the security. 3 Collier on Bankruptcy 57.07. From the incomplete record on appeal of this case, it does not appear that Emerald filed a claim. In that case, there is no room for application of Section 57(h) or Rule 306(d). Valuation of securities held by secured creditors under 57(h) or under Rule 306(d) is only necessary where a secured claim is filed for the purpose of obtaining a distributive share of the estate. 3 Collier on Bankruptcy 57.20(3), at 334. It seems that Emerald relied solely on the security the assignment of accounts receivable. Once Emerald's debt becomes past due, the trustee may recover the collateral by tendering full discharge of the debt.

In view of the above, the Court hereby ORDERS that the United States' appeal be and is hereby DENIED, and the Bankruptcy Court's Order entered on January 20, 1981, be and is hereby AFFIRMED.

IT IS SO ORDERED.